85 So.2d 847 (1956)
Elizabeth Heard HILL, Petitioner,
v.
J.N. MORRIS and Broward National Bank of Fort Lauderdale, as Executors and Trustees under the Last Will and Testament of John Henry Hill, Deceased, John Henry Hill, III, a minor, Anna Belle Johnson, as Guardian of John Henry Hill, III, a minor, and Francis K. Buckley, Guardian Ad Litem for John Henry Hill, III, a minor, Respondents.
Supreme Court of Florida. Special Division A.
January 27, 1956.
Rehearing Denied February 29, 1956.
*848 Joseph A. Varon, Hollywood, Sam D. Phillips, Jr., West Palm Beach, Robert E. Hathaway, Tallahassee, and Phillips & Hathaway, West Palm Beach, for petitioner.
McCune, Hiaasen, Kelley & Crum, Fort Lauderdale, for J.N. Morris and Broward Nat. Bank of Fort Lauderdale.
William H. Grimditch, Jr., Deerfield Beach, for Francis K. Buckley, as Guardian ad Litem for John Henry Hill, III, a minor, for respondents.
HOBSON, Justice.
This petition for certiorari is brought by Elizabeth Heard Hill to review certain rulings of the circuit court culminating in an order denying a joint motion of the parties for determination of the cause upon bill and answer.
Respondent executors of the estate of John Henry Hill, deceased, filed a complaint for declaratory decree, naming as defendants the petitioner, who is the widow of the decedent, and the respondents John Henry Hill, III, minor son of the decedent, and his guardian. The complaint alleged in substance that decedent had died testate, that his widow had intentionally shot and killed him, and that she had filed a claim for family allowance in the probate proceedings and was expected to claim dower. The executors prayed for an order declaring, inter alia, to what extent, if any, the widow was entitled to participate in the estate.
*849 By stipulation, further action in the suit was stayed pending the outcome of criminal proceedings against petitioner in the circuit court on a charge of murder, which finally resulted in a verdict, and judgment duly entered consequent thereon, of "not guilty for the cause of insanity". Petitioner elected to claim dower, and set up the fact of her acquittal in her answer in the instant suit. For affirmative relief she prayed that the court declare her entitled to receive her statutory share in the estate of decedent. Subsequently, a counterclaim was filed on behalf of John Henry Hill, III, by a guardian ad litem who had been appointed for him. The petitioner and the respondent executors were named as defendants to this counterclaim, in which it was alleged, inter alia, that although petitioner had been acquitted of murder, her "killing of decedent was unlawful". The counterclaim prayed for a decree ordering litigation of the question of the alleged unlawful killing and, if the result of such trial should be determined adversely to petitioner, for an order precluding her participation in the estate by way of dower or otherwise. The counterclaim was answered and motions were filed, including a motion by petitioner to dismiss the counterclaim for failure to state an actionable claim, which was denied. Ultimately, all parties joined in a motion for decree on the pleadings, for the reason that "the facts in the above cause have been agreed upon by all the parties hereto". This motion was also denied by the circuit judge, who held that the issue of whether the killing of decedent was "unlawful and felonious" or "justified or excused by reason of [petitioner's] insanity at the time of the killing" would have to be "resolved by testimony before this court as to the circumstances of the death of John Henry Hill before the Court can made a declaratory decree herein".
The question presented on this petition is whether or not a widow who has been duly acquitted, by reason of insanity, from a charge of murdering her husband is entitled as a matter of law to participate in his estate by way of dower. We have never before passed upon this specific question, but we are much assisted by the opinion of the court below and by the excellent briefs prepared by counsel for the parties.
In Florida, the right to dower and the manner of taking it spring wholly from the Probate Law, F.S. Secs. 731.34 and 731.35, F.S.A. Part of the same chapter of the Probate Law, Sec. 731.31, reads as follows:

"Murderer.  Any person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any portion of his estate as a legatee or devisee. The portion of the decedent's estate to which such murderer would otherwise be entitled shall pass to the persons entitled thereto as though such murderer had died during the lifetime of the decedent." (Italics added.)
In Peeples v. Corbett, 117 Fla. 213, 157 So. 510, 511, we held that a complaint seeking to work a forfeiture under this statute failed to state a cause of action where it did not allege a conviction of murder. Commenting on the statute we said, in an opinion by Mr. Justice Buford:
"It will be noted that the legislative enactment only excludes those from inheritance who have been convicted of the murder of a decedent from whom they would otherwise inherit.
"This is a salutary provision and the condition applying only to those who have been convicted of murder is a wise one. If one murders his ancestor, he should not profit by his wrong, but, before he should be required to forfeit his right of inheritance, his guilt should be established beyond a reasonable doubt."
An important part of our reasoning in that case was that since the rights sought to be forfeited arose by statute, and the legislature had also prescribed the conditions under which such rights would be barred for felonious homicide, there was no necessity *850 for the consideration of common-law principles. We therefore concluded that the statute (predecessor of F.S. Sec. 731.31, F.S.A.) should be "given effect as it was written" and held that the complaint stated nothing actionable.
It is true that the Peeples case concerned rights springing from the statutes of descent and distribution rather than dower, but we think its reasoning equally applicable to the case at bar because both interests arise wholly from the Probate Law.
It was held below and it is urged here by respondents that dower is not inheritance, that F.S. Sec. 731.31, F.S.A., does not apply to dower, and that under common-law principles, which thus become applicable, petitioner might be obliged to forfeit her dower.
Whether or not F.S. Sec. 731.31, F.S.A., was intended to cover dower we find it unnecessary to resolve upon this application. Since no conviction was alleged, and indeed it is agreed that petitioner was acquitted, it is obvious that the statutory bar does not operate, by its own terms and under Peeples v. Corbett, supra, and if the common law then enters the breach, we find the weight of authority in connection with dower to be favorable to petitioner, even disregarding the fact of her acquittal.
In 28 C.J.S., Dower, § 52, p. 120, it is stated:

"In the absence of statute to the contrary, a wife does not forfeit her right to dower by wrongfully killing her husband, whether the grade of the offense is murder or voluntary manslaughter." (Italics added.)
And 17 Am.Jur., Dower, Sec. 88, p. 742, reads as follows:
"It is very generally, although not universally, held that in the absence of a statutory provision to the contrary, neither dower nor statutory right of a widow in her husband's estate is barred because she has taken, or was a party to the taking of, her husband's life. In such a case a statute which prescribed in unambiguous terms certain things, not including murder, which shall deprive the widow of her share in her husband's estate prevents the application of the maxim `that no one shall be permitted to take advantage of his own wrong.'" (Italics added.)
If, in the absence of statute to the contrary, the above rules would apply had there been a conviction of murder or other felonious homicide, what of the purifying effect of an acquittal? It was held below, and it is argued here by respondents, that the acquittal cannot be considered, because by a familiar principle a criminal judgment is not res judicata of a civil action and is inadmissible in such civil action as evidence of the facts upon which it was based. Wirt v. Fraser, 158 Fla. 777, 30 So.2d 174; State v. Dubose, 152 Fla. 304, 11 So.2d 477. As we pointed out in Stevens v. Duke, Fla., 42 So.2d 361, 363, this rule is "not without its exceptions". But a more fundamental objection to its applicability in this case is voiced by petitioner, who points out that the real question here is not the effect of the criminal judgment when sought to be introduced in civil proceedings, but whether or not such proceedings may be maintained at all. In the Peeples case, supra, we held that they could not, short of an allegation of conviction. Moreover, as we have indicated, the acquittal by reason of insanity is conceded for purposes of this application, and since the cause was sought by all parties to be determined on the pleadings, we are relieved of the necessity for determining the admissibility of the judgment of acquittal vel non. We can only evaluate it in connection with the matter immediately at hand.
In Chantangco v. Abaroa, 218 U.S. 476, 31 S.Ct. 34, 54 L.Ed. 1116, the Supreme Court of the United States was confronted with a similar situation. There the defendant had been acquitted in a criminal trial in the Philippine Islands and was sued for damages in a civil action arising out of the same facts. Defendant had pleaded his acquittal, and had obtained judgment on the basis thereof. On appeal, this judgment *851 had been affirmed, on the premise that a judgment of conviction was essential to an action for indemnification under the applicable local law. On writ of error to the Supreme Court, plaintiff in error contended that the doctrine of res judicata did not apply. Acknowledging this rule, and discussing its ramifications, the Supreme Court held that it had no application to the case because of the statutory considerations involved. Most important, under the Philippine Code civil responsibility for crime was made dependent upon, and was to be declared in, the criminal proceedings. Thus a conviction of crime was the sine qua non of civil responsibility for the same act, and without a conviction there could be no such responsibility. This was exactly the effect of our holding under the Florida Probate Law in Peoples v. Corbett, supra. In the Chantangco case the Supreme Court of the United States affirmed the judgment from which the writ of error was taken.
The effect of the judgment of acquittal by reason of insanity was to establish conclusively that petitioner was not guilty of the public offense with which she was charged, because as a matter of criminal law she lacked the capacity to commit the crime. This should suffice to clear the record of such epithets as "felonious killer" and the like, with which it is replete, and which are properly applicable only in the criminal law. More significantly, it establishes that she cannot in any event be subjected to the bar which the legislature has made an integral part of the Florida Probate Law. If that bar should be extended, it is a task for the legislature.
Respondents urge upon us insurance cases in which the proceeds of policies of insurance were denied beneficiaries who had killed the insured. Examples are Horn v. Cole, 203 Ark. 361, 156 S.W.2d 787, and DeZotell v. Mutual Life Ins. Co. of New York, 60 S.D. 532, 245 N.W. 58, relied upon by the Court below. But this type of case, which involves a fraud upon a contract right, is not persuasive in a situation concerning a statutory right such as in the case at bar. It is interesting that the Supreme Court of Arkansas, which had decided in Horn v. Cole, supra, that a widow could not share in the proceeds of the insurance policy of her husband. whom she had killed, was later confronted with a claim to dower on behalf of a widow who had killed her husband and committed suicide, in Barnes v. Cooper, 204 Ark. 118, 161 S.W.2d 8. It was there held that dower should be granted as a matter of law without litigation of the lawfulness of the killing because the statutory bar, like ours, applied only to a spouse "convicted of murder".
Another case illustrative of this distinction is Smith v. Greenburg, 121 Colo. 417, 218 P.2d 514. In that case a husband murdered his wife and adopted daughter and committed suicide. It was held that the husband was barred as beneficiary from the proceeds of insurance policies, but that he was not barred from inheriting property of the wife and adopted daughter because he was not convicted of murder. For other illustrative insurance cases, showing the various lines of authority on this subject, see the annotation at 39 A.L.R.2d 477.
Also relied upon are Hogan v. Martin, Fla., 52 So.2d 806, and Ashwood v. Patterson, Fla., 49 So.2d 848, in which we held, in line with the middle current of authority (see the cases collected in annotation at 32 A.L.R.2d 1099) that where one spouse murders the other and they own property by the entireties, the property is treated as if they had been tenants in common. This situation, too, is to be distinguished from the case at bar, since a tenancy by the entireties does not originate from, nor does it involve, the Florida Probate Law.
This distinction is emphasized in the recent Kentucky case of Cowan v. Pleasant, Ky., 263 S.W.2d 494. In a previous case, Eversole v. Eversole, 169 Ky. 793, 185 S.W. 487, L.R.A. 1916E, 593, it had been held that a wife who had been convicted of voluntary manslaughter of her husband was entitled to dower as a matter of statutory right. In the Cowan case the same court was confronted *852 with the tenancy by the entireties situation and held, exactly in line with our judgment in Ashwood v. Patterson, supra, that the property should be treated as if the spouses had been tenants in common. In distinguishing the Eversole case, the court stated [263 S.W.2d 495]:
"The tenor of the Eversole opinion is that statutes pertaining to the inheritance of property must be followed strictly. It was said also in that case that, cases, involving the rights of a beneficiary who murdered the insured for the purpose of obtaining the proceeds of a policy on the latter's life, were not in point, because the wrongful act of a beneficiary was a fraud upon a contract right. The case under consideration is more akin to the category of cases involving contractual rights, because of the manner of acquisition of the property, than it is to those involving inheritance questions. * * * It follows that the Eversole case is not controlling here."
We conclude that no cases involving private, non-statutory property rights bear upon the subject at hand.
Finally, respondents rely upon the Restatement of Restitution, Sec. 187, and comments thereto. The principal rule of this section appears to be largely declaratory of that which the Florida legislature has codified in F.S. Sec. 731.31, F.S.A., supra. Insofar as the comments given in the Restatement regarding the application of the rule are inconsistent with what we have written above, we have found the law covering the case before us to be otherwise.
It follows that certiorari is granted and the challenged orders must be, and they are hereby, quashed with directions to dismiss the action, including the counterclaim. It is so ordered.
DREW, C.J., TERRELL and O'CONNELL, JJ., concur.