88 So.2d 153 (1956)
Ruby J. CARTER, Petitioner,
v.
Hunter J. CARTER, Sr., and Clara Brown, as administratrix of the estate of Hunter J. Carter, Jr., deceased, Respondents.
Supreme Court of Florida, Special Division A.
June 6, 1956.
*155 Latham & Davenport, Pensacola, for petitioner.
Richard H. Merritt, Pensacola, for respondents.
THORNAL, Justice.
Petitioner Ruby J. Carter, one of the defendants below, seeks review of an interlocutory order entered on a motion for summary judgment in an interpleader proceeding
The questions to be determined are whether a wife who was acquitted of the alleged criminal homicide of her husband is entitled to receive the proceeds of an insurance policy on his life wherein she was designated primary beneficiary and what degree of proof is required in a civil proceeding to establish the felonious nature of the homicide. Incidental questions are hereafter pointed out.
Hunter J. Carter, Jr. was allegedly killed by his wife, the petitioner Ruby J. Carter. At the time of his death, his life was insured by the Equitable Life Assurance Society of the United States under a group policy. The certificate of insurance, according to the complaint, named the wife Ruby J. Carter as beneficiary. The complaint alleges that the insurance policy and group certificate provided that in the event that "there be no designated beneficiary, or no beneficiary surviving at the death" of the insured, then the proceeds would be payable to the first surviving class of successive preference beneficiaries, to-wit, (a) the widow, (b) surviving children, (c) surviving parents, (d) surviving brothers or sisters, (e) executors or administrators. The insurance certificate does not appear in the record; therefore the case is disposed of on the basis of the foregoing allegations of the pleadings purporting to show the contents thereof.
The Equitable Life Assurance Society, being dubious of the legal recipient of the proceeds of the policy, filed its complaint as a bill of interpleader alleging that Hunter J. Carter, Jr. met his death as a result of gunshot wounds claimed to have been inflicted by his wife, Ruby J. Carter; that she was tried on a charge of second degree murder and acquitted; that in addition to his wife, the insured was survived by his father, the defendant-respondent Hunter J. Carter, Sr., but not by any children or brothers or sisters. Respondent Clara Brown, as administratrix of the estate and a claimant to the proceeds, was also named as a defendant. After interpleading the three defendants, the trial judge excused the Equitable from further participation in the cause.
The surviving widow, Ruby J. Carter, claims the insurance because she contends that having been acquitted of the alleged criminal offense, the killing was clearly not felonious.
The father, Hunter J. Carter, Sr., claims by his answer that he is entitled to the insurance proceeds because he says the widow *156 admitted killing her husband, that the act was wrongful and that it would be against public policy for her to receive the money.
On the same basic contention, Clara Brown, the administratrix, claims the insurance but in addition contends that the father should not receive it because the various classes of priority recipients were contingent upon the insured dying with "no beneficiary surviving" and that although she is not entitled to the proceeds under the law, the widow Ruby did survive and the widow having survived, the insurance money cannot pass down the line of descendency to the father because of the provisions of the policy itself.
The record also reveals that although Ruby Carter was acquitted by the jury, when she was tried on a charge of second degree murder, she originally pleaded guilty to manslaughter but was permitted to withdraw the plea and go to trial on a plea of not guilty. In doing this she obviously exercised good judgment because the jury in the criminal trial agreed that she was not guilty.
After all of the pleadings were filed, the petitioner moved for a summary judgment. Her motion was denied and in his order, the Chancellor decreed that the "issues will be made up to determine by a preponderance of the evidence whether the claimant wife feloniously killed her husband and further proceedings had in accordance with these views". It is this order that is subjected to review by petition for certiorari.
The petitioner-widow contends that her acquittal in the criminal proceeding precludes any assault on her right to receive the proceeds of the insurance policy as the designated beneficiary and further that Section 222.13, Florida Statutes, F.S.A., controls distribution of the proceeds of an insurance policy to the exclusion of other considerations.
The respondents, father and administratrix, contend that acquittal in the criminal case is material only under Section 731.31, Florida Statutes, F.S.A., relating to inheritance by an alleged "murderer" but has no relevancy to the pending question and that Section 222.13, Florida Statutes, F.S.A., is an "exemption statute" rather than a distribution statute. It is contended by respondents that the results of this cause are concluded by common law principles rather than statutory enactments.
A solution to the problem involves a disposition of several incidental matters. We must first decide whether the cited statutes govern and if not, then the extent to which we will apply common law principles. The effect of the verdict of acquittal in the criminal case must be evaluated and this involves a consideration of the degree and burden of proof that will govern the civil action on the policy. Finally, the ultimate recipient of the proceeds of the policy must be determined in the event that the named beneficiary, to-wit, the widow, should be found disqualified to receive them.
Section 731.31, Florida Statutes, F.S.A., as applicable when this problem arose read as follows:
"Any person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any portion of his estate as a legatee or devisee. The portion of the decedent's estate to which such murderer would otherwise be entitled shall pass to the persons entitled thereto as though such murderer had died during the lifetime of the decedent."
The last cited statute was originally enacted as Section 32 of Chapter 16103, Laws of Florida, 1933, otherwise known as the 1933 Probate Act. A casual examination of Section 731.31, Florida Statutes, F.S.A., reveal that it contains no language at all relating directly or by necessary implication to the right of a designated beneficiary to receive the proceeds payable under an insurance contract. It is merely a statutory restriction on the right to inherit or take under the will of a decedent, which right is prescribed by other sections of the same Act. We have considered Section 731.31, supra, in other cases to be mentioned later. None of these cases, however, involved *157 life insurance contracts and our present consideration leads us to the conclusion that this section clearly does not apply to the controversy before us.
Section 222.13, Florida Statutes, F.S.A., offers no greater difficulty. While in a measure the statute does provide the manner in which the proceeds of an insurance policy shall be distributed under stated circumstances, it is perfectly clear that it is primarily, if not entirely, an exemption statute that protects the proceeds of a life insurance policy against the demands of creditors in certain cases. It was so construed in Milan v. Davis, 97 Fla. 916, 123 So. 668 (see particularly opinion On Petition for Rehearing). The conclusion that Section 222.13, Florida Statutes, F.S.A., is obviously an exemption statute and has no bearing on the problem before us is in some measure supported by the fact that it has consistently been included as a part of Chapter 222 dealing with "Homestead and Exemptions" in each biennial statutory revision adopted by the Florida Legislature. We find nothing in this Act that would lead us to the conclusion that it is any more than a legislative enactment for the protection of the immediate family or the designated beneficiary of an insured against the claims of his creditors.
We have been referred to no statute that controls the situation before us. Our own research reveals none. We must, therefore, explore the broad firmament of the common law and adjudicated cases in order to locate the pole star that will guide us to a safe conclusion. We should be cautious to avoid confusing the issue by applying to insurance cases those precedents that deal with the right of inheritance under statutes such as Section 731.31, supra. It becomes necessary to consider certain broad basic principles upon which we must rely.
It is an axiom of the common law, supported by admirable concepts of common justice, that no person should be permitted to benefit from his own wrong. It is offensive to our sense of right that a wrongdoer be allowed to exploit his wrongs to the injury of another and to the profit of himself. The principle has been applied in many cases involving claims under insurance policies brought by beneficiaries who without excuse or justification killed the insured.
The rule is generally announced in 29 Am. Jur., Insurance, Section 1310, p. 979, as follows:
"It is a well-settled rule that a beneficiary in a life insurance policy who murders or feloniously causes the death of the insured forfeits all rights which he may have in or under the policy. This rule is based upon public policy and upon the principle that no one shall be allowed to benefit from his own wrong. It is not necessary that there should be an express exception in the contract of insurance forbidding a recovery in favor of a beneficiary who intentionally kills the insured, although, of course, the parties may incorporate in the contract a clause creating such an exception or providing for a forfeiture of the beneficiary's rights in the event he murders the insured. Nor is it necessary, to defeat the rights of the beneficiary in such case, to show that the purpose was to obtain the proceeds of the policy; it is sufficient that the killing was the intentional and wrongful act of the beneficiary."
One of the landmark insurance cases on the subject was Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 881, 29 L.Ed. 997, where it was concluded:
"* * * It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had willfully fired."
In Horn v. Cole, 203 Ark. 361, 156 S.W.2d 787, 790, the rule was thoroughly discussed with the following conclusion:
"This court has repeatedly held that where the beneficiary in a policy of life *158 insurance wrongfully kills the insured, public policy prohibits a recovery by the beneficiary. In the case of Metropolitan Life Insurance Company v. Shane, 98 Ark. 132, 135 S.W. 836, 839, this court said: `The willful, unlawful, and felonious killing of the assured by the person named as beneficiary in a life policy forfeits all rights of such person therein. It is unnecessary that there should be an express exception in the contract of insurance forbidding a recovery in favor of such person in such event. On considerations of public policy the death of the insured intentionally caused by the beneficiary of the policy is an excepted risk so far as the person thus causing the death is concerned.'"
It is interesting to note that in a later case, Barnes v. Cooper, 204 Ark. 118, 161 S.W.2d 8, the Supreme Court of Arkansas held that a wife who kills her husband is not thereby precluded from taking a dower interest in his estate unless convicted of murder. We ourselves have so held. See Hill v. Morris, Fla. 1956, 85 So.2d 847.
A more extensive quotation from authorities would in our view unjustifiedly lengthen this opinion. The courts appear to be practically unanimous in the holding that in the absence of a contrary statute, a beneficiary who unlawfully and intentionally takes the life of the insured thereby disqualifies himself to receive the proceeds of the insurance policy. See American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So.2d 791; Protective Life Ins. Co. v. Linson, 245 Ala. 493, 17 So.2d 761; Smith v. Greenburg, 121 Colo. 417, 218 P.2d 514; Annotations to Duncan v. Schoeffler, 40 Wash.2d 850, 246 P.2d 445, 39 A.L.R.2d 473, 500; and Annotations to Beck v. West Coast Life Ins. Co., 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979.
On the basis of the authorities heretofore cited we conclude the initial aspect of our problem by adhering to the rule that since a wrongdoer will not be permitted to profit by his own wrong, the beneficiary of a life insurance policy will not be permitted to receive the proceeds of a policy on the life of one whom he unlawfully and intentionally killed.
By the order under review, the trial judge decreed that the issues in this cause would be decided by a "preponderance of the evidence". The petitioner insists that the verdict of acquittal in her trial on the charge of second degree murder is admissible in this civil action to preclude any consideration of her guilt in the homicide of her husband. This court is committed to the rule that the verdict and judgment in a criminal proceeding are not admissible in a civil proceeding as evidence of the guilt or innocence of a party to the civil cause. The rule is not without some exceptions, for example, under Section 731.31, Florida Statutes, F.S.A., where the ultimate fact of conviction of murder is a condition precedent to denying inheritance to one entitled to inherit. The instant case, however, is not within any of the exceptions and we agree with the trial judge that the verdict and judgment acquitting the petitioner in the criminal action is not admissible in evidence in this case. See Wirt v. Fraser, 158 Fla. 777, 30 So.2d 174; and State v. Dubose, 152 Fla. 304, 11 So.2d 477.
The respondents on the other hand contend that the felonious nature of the killing was established by the petitioner's plea of guilty to manslaughter which was withdrawn in the criminal case. Consistent with the rule that the judgment of acquittal is not admissible, we do not feel that the plea of guilty to manslaughter, which was withdrawn, is admissible as evidence against the petitioner in this civil action. It could hardly be fairly contended that a defendant in a criminal proceeding should be charged with the pleadings on some obviously tactical maneuver on the criminal side of the court and at the same time be denied the benefit of the judgment and verdict in her favor. The issues in this civil case, as the trial judge ruled, should be decided on the basis of the preponderance of the evidence produced in this case entirely exclusive of the record in the criminal proceeding. This likewise *159 has been the rule in similar cases in other courts. Horn v. Cole, 203 Ark. 361, 156 S.W.2d 787; Gholson v. Smith, 210 Miss. 28, 48 So.2d 603; American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So.2d 791.
The record before us reveals nothing at all with reference to the facts that produced the homicide. However, if at the trial a preponderance of the evidence should establish the fact that the homicide was intentional and unlawful in nature and therefore was without the purifying effect of excuse or justification, the petitioner insofar as this cause is concerned would be confronted by the rule heretofore announced that a person will not be permitted to profit by his own wrong. If, however, the evidence preponderates in favor of justification or excuse, an example of which would be self-defense, accident or insanity, then there would be no area for the application of the rule that would prevent her recovery. The burden of proof in the first instance will rest on the party who alleges that the killing was intentional and unlawful. The order of the Chancellor provided that a preponderance of the evidence would govern whether the claimant-wife "feloniously killed" her husband. By the expression "feloniously killed" in this particular type of situation, we understand the Chancellor to have reference to an "unlawful and intentional" killing. As so construed, we find no objection to the use of the word "feloniously". It is altogether appropriate to permit the establishment of these facts by a preponderance of the evidence which is the degree of proof required in civil cases, for the perfectly obvious reason that in a criminal proceeding, which imposes upon the State the burden of proving guilt beyond a reasonable doubt, a jury, being conscious that it is the custodian of the life and liberty of an accused is often apt to emphasize in its thinking extraneous facts and circumstances that are allowed to mitigate the severe penalties of the criminal law. These misplaced emphases cannot be permitted to influence the decision in a civil proceeding where the rights of the parties are evaluated in an entirely different atmosphere undisturbed by those invisible and intangible cross-currents that we all know oftentimes subconsciously influence the judgment of the criminal court jury.
Finally, we are confronted with a decision as to the ultimate recipient of the proceeds of the insurance money here involved in the event that it should be determined that the petitioner is not entitled thereto. The trial judge decided that the father of the deceased should receive the proceeds, there being no surviving children, and the father being next in order of designated priority. The respondent, Clara Brown, as administratrix of the estate of the deceased, claims the proceeds and the petitioner says that even though she is precluded from receiving the insurance as a designated beneficiary, nevertheless, if the money goes to the estate then she is entitled to receive it as a beneficiary of her husband's estate.
Although the problem is not without difficulty, we are of the view that the trial judge again ruled correctly. We wish to underscore the fact that we are not here ruling that this petitioner has been shown to have been precluded from receiving the insurance proceeds as a designated beneficiary because the facts of the matter are not before us. We do hold that if such is established upon a subsequent trial, then the money should go to the surviving beneficiary next in line according to the policy designation.
There are very few cases where the courts have been called upon to resolve this particular issue. However, we align ourselves with the rule announced in Beck v. West Coast Life Ins. Co., 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979, wherein it was held that under circumstances similar to those in the case at bar and under policy provisions analogous to those under consideration the beneficiary next in priority to the excluded beneficiary should receive the proceeds of the policy in preference to the estate of the deceased. There is sound reason for this position. Although obviously not a will, the beneficiary clause of a life insurance policy is in some measure analogous in principle to the disposition of *160 one's estate by will. It is usually ambulatory. It is almost always donative, and in a sense it is testamentary in character in that payment is customarily contingent upon the death of the insured. In view of the nature of the beneficiary clause, it would appear to be appropriate in construing it to endeavor to give effect to the intent of the insured if it is possible to do so without doing violence to the expressed language of the policy.
Some of the writers have undertaken to resolve the problem by declaring that the primary beneficiary becomes the trustee of a constructive trust and holds the proceeds for the use and benefit of the beneficiary next in priority. We think it unnecessary to complicate the problem with involved trust principles. It is perfectly clear that it was the intent of this decedent that if his widow could not receive the insurance, then it would go to his parents in the event that he had no children. While in this case we cannot conclude that the petitioner would be relegated to a status of one civilly dead, we can with safety conclude that when the policy provided for the distribution of the proceeds to various contingent beneficiaries if there was no designated beneficiary "surviving at the death" of the insured, the language was intended to mean a beneficiary entitled to receive the proceeds. Undoubtedly, the deceased never contemplated that he would be killed by his wife, if he was. Certainly, if he had so contemplated, he would not have encouraged the act by establishing a reward in the form of a policy of insurance on his life.
We must assume that the word "beneficiary" as used in a life insurance policy comprehends beneficiary in its broadest legal aspect and in that sense it necessarily must be considered as having reference to the survival of a beneficiary eligible to take. Admittedly, there are those who apply a rule of strict construction to such provisions and by so doing arrive at the conclusion that the words "beneficiary surviving at the death" of the insured mean just exactly that, without the implication of the additional inference of an eligible beneficiary and that if the designated beneficiary survives but becomes ineligible by operation of law then the members of the various successive classes are prevented from taking because of the "survival" of the designated beneficiary. Under this rule the proceeds of the policy would go to the estate of the deceased. For a discussion of the latter view see Bullock v. Expressmen's Mut. Life Ins. Co., 234 N.C. 254, 67 S.E.2d 71. However, the rule of the Bullock case has been adversely criticized. See 30 N.C.L.Rev. 175, wherein among other things the author commented that "It is regrettable that the decision reached was contrary to the existing authority on the subject".
We prefer to adhere to what we consider to be the better rule which is the one that appears to give effect to the intent of the insured by paying the proceeds to the beneficiary first in priority who is eligible under the law to receive the money. In this case it would be the respondent, Hunter J. Carter, Sr., in the event the petitioner is found to be disqualified. This would be so because in the absence of an express provision of the insurance policy, the insurance company itself is not to be relieved of the obligation to pay the amount which it contracted to pay merely because of the alleged wrongdoing of a particular beneficiary.
In order to forestall any concern that this opinion is in conflict with our holding in Hill v. Morris, Fla. 1956, 85 So.2d 847, we feel that it is sufficient to point out that we do not consider that any such conflict exists. In that case we held that Section 731.31, Florida Statutes, F.S.A., would not preclude a widow from taking dower in her husband's estate when she had been acquitted of his murder on the ground of insanity. We recognized there that the statutory bar of the Probate Act provision required a conviction of murder and that under this statute an acquittal regardless of the reason prevented the application of the *161 statute. Furthermore, we also recognized the clear rule of the common law that the right of dower was a preferred property right and that it would not be barred under such circumstances in the absence of a statute expressly doing so.
Petitioner relies on Peeples v. Corbett, 117 Fla. 213, 157 So. 510. The rule of that decision, although a sound one, does not control the instant case. There a son who murdered his father committed suicide before he was tried. In a contest involving the rights of the widow of the wrongdoing son, the court merely followed the language of the statute and held that her inheritance through her husband could not be denied her in the absence of allegation and proof that he had been convicted of murder. Obviously his suicide had relieved the State of a trial and forestalled any conviction and the applicability of the statute.
Because of the novelty of the questions here presented in this jurisdiction and in order to reconcile our solution of this problem with our solution of the problem presented in Hill v. Morris, supra, we have dwelt at considerable length on the principles applicable. Ordinarily under 31 F.S.A. Supreme Court Rule 14, opinions of this court are not written on interlocutory appeals. We considered it appropriate to do so in this instance, however, in order to settle the law of the case and to furnish a guide to the trial court and litigants in the proceedings to follow.
For the reasons hereinabove stated, the prayer of the petition for certiorari is hereby 
Denied.
DREW, C.J., HOBSON, J., and PRUNTY, Associate Justice, concur.