452 So.2d 140 (1984)
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, INC., Appellant,
v.
Herbert M. BAITINGER, Jr. and Jocelyn G. Baitinger, As Personal Representatives of the Estate of Gail Baitinger Johnson, Deceased, Appellees.
No. 83-1552.
District Court of Appeal of Florida, Third District.
June 26, 1984.
*141 Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane and Shelley H. Leinicke, Miami, for appellant.
Lyons & Farrar and Marsha Lyons, Miami, for appellees.
Before NESBITT, DANIEL S. PEARSON and JORGENSON, JJ.
NESBITT, Judge.
Prudential Insurance Company of America (Prudential) appeals an order of the probate court requiring payment of $250,000 in insurance benefits to the personal representatives of Gail Johnson's estate. We affirm the order under review.
Gail Johnson died intestate on August 4, 1983, the apparent victim of a homicide. Shortly thereafter, her widower, Lee Johnson, was arrested and subsequently convicted and adjudicated guilty of the first degree murder of his wife. His appeal from that conviction is still pending.
At the time of her death, Gail Johnson was covered by life insurance policies issued by Prudential and two other insurance companies. The Prudential policy is in the amount of $250,000 and names Lee Johnson as the beneficiary. Following Johnson's conviction, the probate court ordered Prudential to pay the proceeds of the policy to the personal representatives of Gail Johnson's estate. Prudential appeals this order.
Under section 732.802(3), Florida Statutes (1983), a named beneficiary of a life insurance policy who unlawfully and intentionally kills the insured is not entitled to any benefits under the policy. In this regard, the statute essentially codifies the supreme court's holding in Carter v. Carter, 88 So.2d 153 (Fla. 1956). Although in the absence of a conviction of murder, the court may determine whether the killing was "unlawful and intentional" by the "greater weight of the evidence," § 732.802(5), the record in the present case does *142 not indicate the court made any such determination. The court, therefore, must have relied upon the statutory provision in section 732.802(5) that:
A final judgment of conviction of murder in any degree is conclusive for purposes of this section.
Prudential contends that the court could not rely upon Lee Johnson's judgment of conviction because it was not "final" since an appeal thereof was pending. Prudential relies principally upon Joyner v. State, 158 Fla. 806, 30 So.2d 304 (1947), wherein the supreme court held that, for purposes of conviction under Florida's habitual criminal statute, if an appeal has been taken, a judgment of conviction does not become final until it has been affirmed by the appellate court. We find, however, that Joyner is not controlling in the instant case.
Our primary concern in the realm of statutory interpretation is to vindicate the legislative intent. Moldofsky v. Stregack, 449 So.2d 918 (Fla. 3d DCA 1984). In doing so, we must look at each separate and distinct legislative enactment independently. Therefore, the supreme court's interpretation of "final judgment of conviction" for purposes of the habitual criminal statute in Joyner is not necessarily controlling in other areas. See DePaulis v. Judges of District Court of Appeal, Fourth District, 373 So.2d 663 (Fla. 1979) (where the supreme court found that language in the Florida Constitution concerning a final judgment of conviction was intended to mean adjudication of guilt by the trial court). See also Weathers v. State, 56 So.2d 536 (Fla. 1952) (where the supreme court quoted legislative language to the effect that it is a "final judgment of conviction" from which a defendant has a right to appeal). (emphasis added).
In determining the legislative intent behind section 732.802, it is extremely helpful to compare the present statute with its predecessor. The prior statute stated that "[a] person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any part of his estate as a devisee." § 732.802, Fla. Stat. (1981).[1] That statute applied only to property that would pass by intestacy or through the decedent's will. Carter. In 1982, the legislature expanded the scope of the section to prevent a killer from receiving property passing outside the decedent's estate. See § 732.802(2) (concerning survivorship interests in property held in joint tenancy or tenancy by the entirety or in any other form of co-ownership);[2] § 732.802(3) (concerning interests created by contractual arrangements, such as insurance policies and bonds);[3] § 732.802(4) (catchall provision concerning any other acquisition of property or interest by the killer).[4] Additionally, the former statute required a criminal conviction of murder as a prerequisite to a forfeiture of the killer's interest in the decedent's estate. See Peeples v. Corbett, 117 Fla. 213, 157 So. 510 (1934). See also Nable v. Estate of Godfrey, 403 So.2d 1038 *143 (Fla. 5th DCA 1981) (the prior statute required a conviction of murder and manslaughter was insufficient to trigger the statute's forfeiture provision). The present statute, on the other hand, does not require a conviction of murder. In the absence of such a conviction, it specifically provides for a civil homicide proceeding where the standard of proof is "the greater weight of the evidence." § 732.802(5).
The foregoing clearly illustrates that the legislature intended to make it more difficult for a killer to receive any beneficial interest as a result of his wrongdoing.[5]See State v. Rodriquez, 365 So.2d 157 (Fla. 1978) ("It is a fundamental rule of statutory construction that the entire statute under consideration must be considered in determining legislative intent."). Accord State v. Gale Distributors, Inc., 349 So.2d 150 (Fla. 1977). The legislature, thereby, was acting in accordance with the public policy expressed in Carter.[6] The change in the statutory language from "convicted of the murder" in the former statute, to "final judgment of conviction of murder" in the present statute was merely stylistic. See DePaulis (insertion of the word "judgment" was not intended to alter the policy, it was designed only to resolve a potential ambiguity in the word "conviction"; the committee intended the finality of conviction to be the adjudication of guilt); State v. Webb, 398 So.2d 820 (Fla. 1981) ("legislative intent is the polestar by which the court must be guided, and this intent must be given effect even though it may contradict the strict letter of the statute"). We hold that the legislature intended that "final judgment of conviction" mean an adjudication of guilt by the trial court and that such would be conclusive for purposes of section 732.802. See DePaulis.
Lee Johnson was tried, convicted and adjudicated guilty of the first degree murder of his wife. This was conclusive for purposes of determining his interest in the insurance proceeds as the named beneficiary in the policy covering his wife's life. § 732.802(5). Pursuant to the statute, Lee Johnson was entitled to no benefits under the policy, and the policy became payable as though he had predeceased his wife. § 732.802(3). The proceeds, therefore, were payable to any alternative beneficiaries designated in the policy, Carter, or absent such designation, to the decedent's estate.
For the foregoing reasons, we affirm the trial court's order requiring Prudential to pay the policy proceeds to the personal representatives of Gail Johnson's estate.
JORGENSON, Judge, specially concurring.
Prudential's appeal is based upon its apparent fear that should Johnson prevail in the pending appeal from his homicide conviction Prudential will be bound by its insurance contract to pay to Johnson benefits it would already have paid to the late Mrs. Johnson's estate, thereby subjecting Prudential to double liability. It is evident *144 from the record that Prudential's compliance with the probate court's order will result only in the payment of the benefits of the insurance policy into one-year certificates of deposit. The probate court has taken appropriate steps to forestall distribution of the proceeds until resolution of Johnson's criminal appeal.
Although to some extent the facts of this case (and to a far greater extent a scenario in which an innocent person is convicted of killing his spouse but ultimately proven to be truly, not technically, innocent) demonstrate that the risk of application of the statute to the wrong person cannot be eliminated, the risk would be greatly reduced by amending the statute to provide for its application only by means of a civil homicide proceeding without reference to a criminal conviction.
NOTES
[1] The language had changed very little from the initial enactment of the provision in 1933. See Peeples v. Corbett, 117 Fla. 213, 157 So. 510 (1934) (quotes the original provision).
[2] The prior statute did not work a forfeiture of survivorship interest in property held by the entirety where one spouse killed the other. The statute was inapplicable because the interest passed outside the decedent's estate. Instead, courts had to resort to the equitable principle that "no one should profit by his crime," to keep the property out of the killer's hands. See Ashwood v. Patterson, 49 So.2d 848 (Fla. 1951).
[3] The prior statute did not apply to insurance proceeds passing to a beneficiary who killed the insured. Again, courts had to resort to the equitable principle that a wrongdoer will not be permitted to profit by his own wrong, to prevent the killer from receiving the proceeds. See Carter.

In Carter, the supreme court held that an insurance beneficiary who is found in a civil proceeding to have "unlawfully and intentionally killed" the insured is not entitled to the insurance proceeds. The court held that a preponderance of the evidence was the proper standard in such a proceeding. The present statute adopts this standard and procedure.
[4] This provision clearly illustrates the legislative intent to broaden the scope of the statute as far as possible so that courts would no longer have to rely solely on equitable principles to prevent a killer from profiting from his action.
[5] Referring to the prior statute, Judge Cowart, in Nable, 403 So.2d at 1041 (concurring opinion), found it:

ironic that this statute, ostensibly enacted to enable the courts to deny benefit to a killer, is now used as the very tool to accomplish what it was designed to prevent. The relative rights to the property of a decedent, as between the decedent's killer and the decedent's other heirs or devisees, should not be left to depend on the willingness of the public prosecuting officer and the ability of a criminal defense counsel to make a deal as to one degree of homicide rather than another. The present statute should be replaced with one merely stating the broader principle that one whose act, procurement, or culpable negligence causes the death of another shall receive no property or other benefit as a result of such death.
It is obvious that the legislature recognized these concerns when it enacted the new statute in 1982.
[6] In Carter, 88 So.2d at 157, the supreme court stated:

It is an axiom of the common law, supported by admirable concepts of common justice, that no person should be permitted to benefit from his own wrong. It is offensive to our sense of right that a wrongdoer be allowed to exploit his wrongs to the injury of another and to the profit of himself.