## PRUDENTIAL INSURANCE COMPANY of AMERICA, Plaintiff,

### v.

Rebecca MARULLO, individually and as Representative of the Estate of James A. Marullo; John Doe as Guardian of the property of the children, stepchildren and adopted children of James A. Marullo; and Angela Marullo, Defendants.

### No. 90–7011–CIV.

United States District Court, S.D. Florida.

Oct. 9, 1991.

Cecelia Aulick, of Wicker, Smith, Tutan O'Hara, McCoy, Graham & Lane, P.A., Miami, Fla., for Prudential Ins. Co.

Kenneth D. Cooper, Ft. Lauderdale, Fla., for Rebecca Marullo.

Alan B. Cohn, of Abrams, Anton, Robbins, Resnick & Schneider, P.A., Hollywood, Fla., for the Guardian of the property of the children, stepchildren and adopted children of James A. Marullo.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAINE, District Judge.
But fresh lilaced moorland fields cannot hide the stolid stench of death.
—Morrissey, *Suffer Little Children.*

1. On April 21, 1988, James A. Marullo ("James"), enrolled in a group life insurance policy, issued by the Plaintiff, Prudential Insurance Company of America ("Pru-

dential"), as part of a employee benefit plan established by James' employer, Florida Power & Light.

2. Pursuant to the terms of the policy, Prudential agreed to provide group life insurance in the amount of $10,000 and group accidental death insurance in the amount of $10,000 for a total of $20,000 in benefits due the legal beneficiary.

3. At the time of enrollment, James designated his wife, Rebecca Marullo ("Rebecca"), as beneficiary in the policy's Group Life Insurance Enrollment and Beneficiary Designation Form ("Designation Form"). He did not designate his daughter, Leona Julliette Marullo ("Leona") or a stepchild from Rebecca's previous marriage, Jessica Lea Shapiro ("Jessica") as additional beneficiaries.

4. The Designation Form provided that in the event the named beneficiary was not living at the time of the insured's death, the policy's proceeds were payable to the surviving spouse, if living, then to the insured's surviving children, including stepchildren and adopted children.

5. On December 13, 1988, the Marullos were engaged in a heated argument at their residence in Pembroke Pines, Florida. After threatening to kill his wife, James entered the couples' bedroom where he cocked the .44 caliber pistol that he slept with under his pillow. Rebecca, meanwhile, grabbed the .357 revolver that James had given her as a wedding present. James left the bedroom without the gun and continue the quarrel in the kitchen. He walked towards his wife with his right hand behind his back as she stood in the dining room. Believing that he had the pistol behind his back, Rebecca, without retreating, shot her husband once in the chest. After stating "don't hurt me anymore," James died.[1]

6. Thereafter, an Indictment was filed in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case No. 89–9482CF, charging Rebecca with manslaughter.

7. On February 28, 1990, Rebecca entered into a plea agreement with the State of Florida, whereby she pled guilty to a charge of manslaughter by culpable negligence and was sentenced to seven years probation.

8. Four claims have been filed on the policy's proceeds, three by Rebecca in different capacities: (a) for herself as spouse and named beneficiary of the policy; (b) as guardian of the decedent's child; and (c) as the personal representative of the estate of James A. Marullo. A fourth claim has been filed by James' aunt, Angela Marullo ("Angela"), for reimbursement of funeral expenses.

9. On December 18, 1990, Prudential commenced this statutory interpleader action, pursuant to 28 U.S.C. § 1335, asking the undersigned to determine the recipient of the policy's proceeds in light of Florida Statute § 732.802(3).

10. Florida Statute § 732.802(3) prohibits the beneficiary of a life insurance policy from recovering any benefit if they unlawfully and intentionally killed the person whose life the policy is issued. It essentially codifies the Florida Supreme Court's holding in *Carter v. Carter*, 88 So.2d 153 (Fla.1956) in that it intends to make it difficult for a killer to receive any beneficial interest as a result of their wrongdoing. *Prudential Ins. Co. v. Baitinger*, 452 So.2d 140, 143 (Fla.App. 3d Dist.1984).

11. Section § 732.802(3) provides:

A named beneficiary of a bond, life insurance policy, or other contractual arrangement who *unlawfully and intentionally kills* the principle obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement; and *it becomes payable as though the killer had predeceased the decedent.*

(emphasis added).

12. The fact that an individual was wrongfully attacked cannot justify her use

---

**1.** It appears that earlier that year, on May 24, 1988, the Pembroke Pines Police Department were summoned to the Marullo household as the result of a domestic disturbance involving their children. At that time officers noted James making the statement "anyone who tries to take the baby will have to kill me," to which Rebecca reportedly replied "that will be me."

of force likely to cause death or great bodily harm, if by retreating she could have avoided the need to use that force. If, however, the individual was placed in a position of imminent danger of death or great bodily harm and it would have increased her own danger to retreat, then her use of force likely to cause death or great bodily harm was justifiable. *Lynn v. Philadelphia American Life Ins.,* 543 So.2d 807, 808 (Fla.App. 2d Dist.1989); *See* Florida Standard Criminal Jury Instruction 3.04(d).

13. Under Florida law, the "castle doctrine," that is, the privilege of non-retreat in the home, does not apply where the assailant and the victim are both legal occupants of the same home. *State v. Bobbitt,* 415 So.2d 724, 726 (Fla.1982).

14. Because she unlawfully and intentionally killed her husband, Rebecca is deemed to have predeceased James and is prohibited from collecting insurance benefits under Prudential's group policy.

15. Any proceeds, therefore, are payable to alternative beneficiaries designated in the policy. *Carter,* 88 So.2d at 159. In accordance with the Designation Form, the benefits are payable to the insured's surviving children, including stepchildren and adopted children.

In light of all the foregoing, it is hereby ORDERED and ADJUDGED that

(1) Prudential shall pay the benefits of the group insurance policy to a guardianship account on behalf of Leona and Jessica. The funds shall be withdrawn from this account by Rebecca Marullo only in extraordinary and exceptional circumstances and only upon Petition and Court Order in the Probate Court. This definition excludes the "extraordinary and exceptional circumstances" of Rebecca Marullo. In utilization of this provision for the withdrawal from the guardianship account, the Probate Court, which may be requested to approve such a withdrawal, is requested to *narrowly* consider such requests. It should not be granted unless an *overwhelming* need is clearly and convincingly supported by the evidence and unless it can

be shown that the funds are needed specifically for the welfare of the children, and no other purpose.

(2) Rebecca Marullo's claims for the policy's proceeds: (a) for herself as spouse and named beneficiary of the policy; (b) as guardian of the decedent's child; and (c) as the personal representative of the estate of James A. Marullo are DENIED.

(3) Angela Marullo's claim for the policy's proceeds is DENIED.

(4) Prudential will not be awarded attorneys' fees and costs as it has waived its right to this compensation.

(5) Leona and Jessica's guardian shall have eleven (11) days from the date of these findings in which to provide the court with (a) law in support of her entitlement to attorneys' fees and costs; and (b) affidavits setting forth said amounts of fees and costs.

DONE and ORDERED.