# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS THE CIRCUIT AND DISTRICT COURTS AND THE COMMERCE COURT

---

### PHILADELPHIA & R. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit.   November 6, 1911.)

#### No. 3 (1.452).

RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—CONSTRUCTION—VIOLATION BY HAULING DEFECTIVE CAR—"ON ITS LINE."

Where a railroad company operates its trains engaged in interstate commerce with its own engines and crews over the tracks of another company, under a contract between them, such tracks are a part of its line, within the meaning of Safety Appliance Act March 2, 1893, c. 196, § 6, 27 Stat. 532, as amended by Act April 1, 1896, c. 87, 29 Stat. 85 (U. S. Comp. St. 1901, p. 3175), imposing a penalty on any railroad company hauling or using "on its line" any car in violation of its provisions, and it is immaterial that its trains, while on such tracks, are run subject to rules and regulations prescribed by the owner of the tracks; nor is it any defense to an action to recover the penalty for hauling a car not equipped as required by the act in one of its interstate trains on such tracks that the inspection of such cars is made by a servant of the company owning the tracks, who, in performing such duty, acts as its own inspector.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

Buffington, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Jersey.

Action by the United States against the Philadelphia & Reading Railway Company. Judgment for the United States, and defendant brings error. Affirmed.

James F. Campbell, for plaintiff in error.

Philip J. Doherty, Sp. Asst. U. S. Atty. (John B. Vreeland, U. S. Atty., on the brief), for the United States.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. This was a suit in the court below instituted by the United States of America, defendant in error, against the Phil-

adelphia & Reading Railway Company, plaintiff in error, for the recovery of a statutory penalty for a violation of an act of Congress, known as the "Safety Appliance Act" (approved March 2, 1893, as amended April 1, 1896, and March 2, 1903), in moving over its line of railroad, with its locomotive and its train crew, a car not equipped in compliance with the terms of said act.

Judgment on verdict was rendered in favor of the United States, and the defendant has sued out this writ of error. The material facts, as disclosed by the record and undisputed, are as follows:

The defendant below is a corporation organized and doing business under the laws of the states of New Jersey and Pennsylvania, and was engaged in interstate commerce on the date of the alleged offense. A Baltimore & Ohio freight car, No. 13,412 (the car alleged to have been defective), regularly used in the movement of interstate traffic, but at the time of said violation being empty, was consigned from a. point in New Jersey to a point within the state of Pennsylvania, and was moved in a westerly direction from Elizabethport, N. J., on the date of the alleged offense, in a train controlled by a crew and hauled by an engine of the defendant company.

The sections of the safety appliance acts applicable to the case at bar, are as follows:

Section 4, Act of March 2, 1893 (27 Stat. p. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), provides:

"That from and after the first day of July, 1895, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or hand holds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

Section 6 of this act, as amended April 1, 1896 (29 Stat. p. 85, c. 87 [U. S. Comp. St. 1901, p. 3175]), provides:

"That any such common carrier using any locomotive engine, running any train, or hauling or permitting to be hauled or used on its lines any car in violation of any of the provisions of this act, shall be liable to a penalty of one hundred dollars for each and every such violation, to be recovered in a suit or suits to be brought by the United States District Attorney in the District Court of the United States having jurisdiction in the locality where such violation shall have been committed."

It is not denied that there was an absence from the car above described of the grab irons or hand holds, as required by this act and, charged in the declaration of the plaintiff, nor that in that respect the act was violated by some one. The defense, however, set up, was and is that, under section 6 of the act, as above quoted, by which alone the penalty sued for here is imposed, such penalty is made recoverable only against a common carrier who hauls, or permits to be hauled or used, *on its lines* any 'car in violation of the provisions of the act.

The plaintiff in its declaration charges:

"That on the day and year last aforesaid, and while the said car was not provided with grab irons or hand holds, as aforesaid, the defendant, well knowing the premises, did unlawfully use the said car in interstate commerce; that is to say, the defendant did haul said car over its line of railroad from Elizabethport, in the state of New Jersey, in a westerly direction, consigned to a point within the state of Pennsylvania, the said car being one regularly

used in the movement of interstate traffic, thereby violating the statute in such case made and provided, known as the Safety Appliance Act," etc.

The evidence showed that the car in question, on the day charged in the declaration (October 10, 1907) was at Elizabethport, in the state of New Jersey, on the tracks of the New Jersey Central Railroad; that it was part of a train bound westward, attached to an engine of the defendant company and in the conduct and charge of that company's employés; that it was there inspected by a government official, and its defective condition discovered as it and the train of which it was a part were about to proceed westwardly towards Bound Brook and the tracks of the defendant company; that it was the custom for trains of the defendant company, made up in Jersey City and other points on the New Jersey Central Railroad, hauled by defendant's engines and in charge of its employés, to pass in continuous movement from the said Central Railroad onto the tracks of the defendant company, in the conduct of its interstate traffic, thus making what may properly be called a line of interstate traffic over both roads belonging to and operated by the defendant company. It was also shown that this train actually started on its passage in the direction named.

There was evidence introduced tending to show that the defendant company had no direct access over its own tracks to Jersey City and New York Harbor, and that its traffic, passenger and freight, was conducted under an agreement with the New Jersey Central Railroad Company, by which trains from Philadelphia and the West passed at Bound Brook, in the state of New Jersey, from the tracks of the defendant company onto the tracks of the New Jersey Central, in order to reach Jersey City and New York Harbor, and reversely, from the tracks of the latter company to the tracks of the defendant company at Bound Brook. This agreement was mutual and reciprocal, and trains of the New Jersey Central Company, in going eastward and westward, passed at Bound Brook from and to the tracks of the defendant company. There was also evidence tending to show that, while the trains of either company were on the tracks of the other, they were subject to the rules and regulations of the company owning the tracks, and that trains were made up and dispatched in conformity thereto; that the crews of each company, while on the tracks of the other company, were primarily paid by the company whose employés they were, and these payments were taken into the account and settled for periodically, under the traffic arrangement between the two corporations. There was testimony tending to show that the way-bills of the cars constituting the train in question called for transportation to points beyond the state of New Jersey.

Under this evidence, the case was submitted to the jury, with a charge from the court below, to which several exceptions were taken, upon which assignments of error have been founded.

These separate assignments of error need not now be considered, as the charge as a whole was not unfavorable to the defendant. In the view we take of the case, the learned judge was not called upon to submit to the jury, as he did, as a determining question, whether, as a matter of fact, the car in question got onto the tracks or line of the de-

fendant company at Bound Brook, in its movement westward. 'The ascertainment of this as a fact was not necessary to the conclusion reached by the jury, in view of the evidence that we have above recited. There was abundant evidence tending to show that this car and the train of which it was a part was a car and train in the management and control of the defendant company, in the conduct of its interstate traffic, and that for the purposes of this case, and within the meaning of the act, it was a car being used and hauled in the conduct of such traffic *on the line* of the defendant company. It is true that the tracks upon which the evidence places the car were the tracks of another corporation, to wit, the New Jersey Central Railroad Company, but the evidence tends to show that the defendant company was in lawful use of these tracks for the conduct of its interstate traffic, under a contract with the corporation owning the same. The fact that, in conducting its train over these tracks the defendant company did so subject to such rules and regulations of the other company as were necessary for the safe and convenient conduct of its business, in nowise militates against the proposition, that the defendant company had a legal right to the use of these tracks, and that during such use, they were properly the line of the defendant company, within the meaning of the "Safety Appliance Act." It was therefore in violation of the act that it allowed the car in question to be hauled in its own train, in the control of its own employés, over a line upon which it had a legal right to conduct its interstate traffic. Such contracts are not unusual, since we find cases in the books arising out of litigation concerning such agreements. The fact, if it be a fact, that in this case the inspection of the cars was made by the servants of the New Jersey Central road, cannot relieve the defendant from the liability imposed by the act. It cannot by contract dispense with any care required of it by law, and the most that could be said of such a situation would be that it had voluntarily made the inspectors of the other company its own.

For the reasons above stated, the judgment below should be affirmed.

BUFFINGTON, Circuit Judge, dissents.