60 N.J. Super. 175 (1960)
158 A.2d 441
FRANK V.L. TURNER, ADMINISTRATOR OF THE ESTATE OF CHARLES W. WELLS, DECEASED, PLAINTIFF,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, A NEW JERSEY CORP., NORMAN LONIE, GRAHAM LONIE, SANDRA LONIE, CHARLES WELLS AND MOIRA WELLS, MINORS, AND MARGARET E. WELLS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 18, 1960.
*176 Mr. Frank Sahl, attorney for plaintiff.
Mr. George D. Rothermel, attorney for defendant The Prudential Insurance Company of America.
Mr. Edward L. O'Brien, attorney for Thomas Lonie, guardian ad litem for Norman Lonie, Graham Lonie and Sandra Lonie.
Mr. Daniel W. Beckley, attorney for Robert H. Schumann, guardian ad litem for Moira Adrienne Wells.
WICK, J.S.C.
On August 17, 1942 the deceased, Charles W. Wells, entered into a contract of life insurance with the Prudential Insurance Company of America. This policy when issued contained the name of his then wife, Helen V. Wells, as sole beneficiary. After their divorce decedent exercised his power to change the beneficiary and on May 11, 1955 named Margaret E. Lonie, fiancee, as the primary beneficiary, and her three children, Sandra Lonie, Graham Lonie and Norman Lonie, as alternate or contingent beneficiaries. The decedent later married Margaret E. Lonie, and thereafter Charles W. Wells, Jr. was born of the union; and the wife was, on the date of death of decedent, enceinte with child, born subsequently and named Moira Wells. Needless to say, no other change of beneficiary was made, hence this action.
On February 8, 1958 Charles W. Wells died from wounds inflicted by gun shots, for which his wife, Margaret E. Wells, was tried and convicted of murder in the second degree; and for which she is presently confined in prison.
Suit was instituted by plaintiff as administrator of the decedent's estate to secure payment to him of the $5,000 *177 policy. Defendants are the insurance company, the aforesaid five children and the widow. By interpleader on cross-claim the monies have been paid into court and the insurance company discharged. Default has been entered against the widow, the convicted murderess. Guardians ad litem have been appointed for all children, they being minors.
Plaintiff and the guardian ad litem for the two children born of the marriage between the deceased and the convicted murderer contend the proceeds should be paid to the administrator. The guardian ad litem for the three older children born of the previous marriage of the widow and convicted murderer who are the named alternate or contingent beneficiaries, contends the proceeds should be paid to him, for their exclusive benefit.
The policy of insurance contained this written provision as a beneficiary rider form:
"A beneficiary designated in this rider shall be entitled to payment only if he or she is living at the death of the insured and if there is not then living a beneficiary designated in a prior class." (Emphasis supplied.)
As stated by Chief Justice Vanderbilt in Neiman v. Hurff, 11 N.J. 55, 60 (1952):
"To permit the murderer to retain title to the property acquired by his crime as permitted in some states is abhorrent to even the most rudimentary sense of justice. It violates the policy of the common law that no one shall be allowed to profit by his own wrong `nullus commondum capere protest de injuria sua propria.'" See Merrity v. Prudential Insurance Co., 110 N.J.L. 414 (E. & A. 1933), and Swavely v. Prudential Insurance Co., 10 N.J. Misc. 1 (Sup. Ct. 1931).
The same reasoning has been universally declared as one of public policy, that the murderer shall not benefit by his deed either through insurance proceeds or property rights.
The question as to who shall receive said insurance proceeds as between the personal representative of the insured's estate and the alternate beneficiary has led to considerable *178 differences throughout the country, as well as the method of arriving at the conclusion. Other than Neiman v. Hurff, supra, dealing with joint tenancy in real property and joint ownership of stocks, no New Jersey case has been found in point.
In Beck v. West Coast Life Insurance Co., 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979 (Sup. Ct. 1952), where the policy read "David Albert Downey  Husband, if living, otherwise to Jettie Knoll  Friend of the Insured," the court said:
"As between the estate of the insured and the alternative beneficiary there are three possible solutions. It has been held that the absence of any express provision in the policy permitting the alternative beneficiary to take, when the primary beneficiary is still alive requires that the proceeds be paid to the estate of the insured. Beck v. Downey, 9 Cir., 191 F.2d 150, 152. The choice might also be made on the basis of mortality tables and the proceeds paid to the person or persons who would be most likely to take had the murder not been committed. The third solution is to allow the alternative beneficiary to recover the proceeds. Metropolitan Life Ins. Co. v. McDavid, D.C., 39 F. Supp. 228; Neff v. Massachusetts Mutual Life Ins. Co., Ohio Com. Pl., 96 N.E.2d 53, 54-55; United States v. Kwasniewski, D.C., 91 F. Supp. 847, 854; Sharpless v. Grand Lodge, Ancient Order of United Workman, 135 Minn. 35, 37, 159 N.W. 1086, L.R.A. 1917B 670; see 3 Scott on Trusts, 494.1, p. 2407; Costigan, Note, 9 Ill. L. Rev. 505, 509; Wade, Acquisition of Property by Willfully Killing Another  A Statutory Solution, 49 Harv. L. Rev. 715, 742.
We have concluded that the third solution should be adopted. Because the beneficiary clause of a life insurance policy in which the insured has reserved the right to change beneficiaries is donative and testamentary in character [cases cited], the intent of the insured as expressed by the language that she used should be given effect so far as possible. * * * Although her expressed intent that her husband receive the proceeds cannot be given effect, the policy names the one she wished to take if her husband could not. It stated that the proceeds should be paid to the alternative beneficiary, if the primary beneficiary predeceased the insured. Thus, in the type of disability that would naturally be anticipated by the insured, the alternative beneficiary was preferred over the estate of the insured. In this case there occurred the only other possible contingency in which the primary beneficiary would be under a disability equivalent to actual death. The insured has clearly indicated her intent that any interest her estate might have in the proceeds of *179 the policy should be subordinate to the interest of the alternative beneficiary. This intent is recognized by a holding that the alternative beneficiary may recover the proceeds. A holding that the estate of the insured is entitled to the proceeds would not only defeat this intent, but would also enable the murderer to deprive the alternative beneficiary of her opportunity to take in preference to the estate by foreclosing the possibility that the murderer might predecease the insured. The rule that prevents his profiting by his own wrong should not be invoked in such a way as to prejudice the rights of the alternative beneficiary. `In a word, it appears to me that the crime of one person may prevent that person from the assertion of what would otherwise be a right, and may accelerate or beneficially affect the rights of third persons, but can never prejudice or injuriously affect those rights.' Fry, L.J. in Cleaver v. Mutual Reserve Fund Life Ass'n. 1892, 1 Q.B. 147, 160." 241 P.2d, at page 546-547.
In Beck v. Downey, 191 F.2d 150 (9 Cir. 1951), where the policy similarly read, "* * * to David A. Downey, her husband, if living, otherwise to Jennie B. Downey, mother-in-law" (of the insured), the District Court awarded the proceeds to the mother-in-law on the theory that David A. Downey, although living, was pursuant to California law civilly dead and, therefore, the contingent beneficiary was entitled to said proceeds. The appeal court pointed out that the policies should not be determined on the basis of California law which provided for civil death by statute, but by Colorado law where the murder was committed and which had no such statutory provision. The court then determined that because David A. Downey was still living, the words of the policy being clear and unequivocal, the proceeds must go to the administrator. This case was appealed to the United States Supreme Court where certiorari was allowed, 343 U.S. 912, 72 S.Ct. 646, 96 L.Ed. 1328, then remanded to the District Court for further consideration in the light of the Beck v. West Coast Life Insurance Co. decision by the California Supreme Court, and upon reconsideration the Court of Appeals readopted its opinion and decision as reported in 191 F.2d 150. The opinion contains the concurring opinion of the District Court judge who indicates that because the murderer's mother was the *180 alternate beneficiary it could be expected that the murderer would receive some of the proceeds upon her death, and therefor she should not be permitted to take. This comment was also contained in In re Wilson's Will, 5 Wis.2d 178, 92 N.W.2d 282, 287 (Wis. Sup. Ct. 1958), citing Baekgaard v. Carreiro, 237 F.2d 459 (9 Cir. 1956), "`The fact that in Beck v. Downey, the alternative beneficiary was the mother of the murderer may have greatly influenced the decision of this court. This is evident as shown by the concurring opinion of Judge Fee in the case 9 Cir., 198 F.2d 626.'"
It is noted in In re Wilson's Will, 92 N.W.2d, at pages 283-287, that in this and comparable situations, such as joint tenancies and wills, there are actually two questions to be considered, although this is not always made clear by the courts. The first is, does the principle that no one shall be allowed to profit from his own wrong apply initially, preventing the murderer from taking any title, legal or equitable, or does the property vest in him, with that principle then coming into operation so that a constructive trust is imposed upon the property, depriving him of any equitable interest in the property in order to prevent unjust enrichment? The court in In re Wilson's Will determines that the constructive trust theory is preferable "because it is based on sounder logic, and affords a court of equity greater flexibility in arriving at a just result which does not defeat the intent of the deceased." In Neiman v. Hurff, supra, the court objects to depriving the murderer of all title on the ground that
"* * * to divest the surviving murderer of all legal title violates or does violence to the doctrine of vested rights and would conflict with N.J.S. 2A:152-2 N.J.S.A.: `No conviction or judgment for any offense against this state, shall make or work corruption of blood, disinherison of heirs, loss of dower, or forfeiture of estate.'"
Evidently this objection is of the same compelling force in regard to the rights of a beneficiary of an insurance policy as "in this state it seems to be the accepted rule that, notwithstanding *181 the reservation of the right to change the beneficiary, the interest of the designated beneficiary in such a policy is a vested property right, payable if he survives the insured, which can be divested only by a change of beneficiary in the mode and manner prescribed by the contract." Metropolitan Life Ins. Co. v. Woolf, 138 N.J. Eq. 450, 454 (E. & A. 1946). Even if it were not necessary to apply the constructive trust theory, its application in this situation is eminently appropriate and it should thus nevertheless be applied.
The next question, as noted in Neiman v. Hurff, 11 N.J., at page 62, is who succeeds to property or who are the beneficiaries of the trust? In that case the court was dealing with a contest between the sole named beneficiary under a will and the murderer husband. The husband maintained that the beneficiary should be determined by use of the mortality tables. The court disposes of this contention as follows:
"Inasmuch as the husband by his wrongful act has prevented the determination in the natural course of events of whether he or his wife would survive, it is not inequitable to presume that the decedent would have survived the wrongdoer. In this situation there is no justification for determining survivorship according to the mathematical life expectancies of the decedent and her murderer. The wrongdoer, having prevented the natural ascertainment of the answer to the question of survivorship, should not be permitted to avail himself of mortality tables which may have no applicability as between him and the decedent in respect to their respective individual possibilities of survivorship. Equity therefore conclusively presumes for the purpose of working out justice that the decedent would have survived the wrongdoer. In no other way can complete justice be done and the criminal prevented from profiting through his crime, Vesey v. Vesey, [237 Minn. 295], 54 N.W.2d 385 [32 A.L.R.2d 1090] (Minn. Sup. Ct. 1952)."
As far as this case is concerned then, this much is clear, the murderer wife cannot take the proceeds of this policy, as she is conclusively presumed to have predeceased her husband. It, however, is doubtful whether such a conclusive presumption should also be indulged in in regard to the *182 two groups of innocent parties now before the court, the heirs and next of kin and the alternative beneficiaries. Although it would work an equitable result in this case to pass the proceeds of the policy on to the alternative beneficiary under the policy, the result of its application in all such situations might not be an equitable one. Rather, the alternative beneficiaries will recover as beneficiaries of the constructive trust on the ground that deceased has expressed his intention in regard to who was to take the proceeds of the policy in the event of his wife's inability to take. Naturally, he did not have in mind this unusual cause for her inability to take, but inability has occurred, and his primary intention was that in such event the named alternative beneficiaries should take and not his estate. There being no countervailing equities, the court will pay heed to this intention.
Judgment will be entered accordingly.