## AMERICAN FOUNDATION LIFE INSURANCE COMPANY AND JAMES E. WAMPLER v. MARY WILLODEAN WAMPLER

73-49                                497 S.W. 2d 656

### Opinion delivered July 16, 1973

*Spitzberg, Mitchell & Hays* and *John D. Eldridge,* for appellants.

*Bill R. Holloway,* for appellee.

CONLEY BYRD, Justice. Appellee Mary Willodean Wampler brought this action against appellant American Foundation Life Insurance Company to recover as a beneficiary upon a life insurance policy on her son Jimmy Wayne Wampler. The Company defended upon the ground that James E. Wampler as the "premium payor" had changed the beneficiary to eliminate appellee as a beneficiary. The Company, having paid the proceeds of the policy to cross-appellant James E. Wampler, brought him into the controversy upon a third party complaint to recover any proceeds that may have been wrongfully paid to him under the terms of the policy. The trial court awarded judgment in favor of appellee and against the Company for one half the proceeds of the policy and awarded judgment in favor of the Company and against Mr. Wampler for one half of the proceeds paid to him. The Company has appealed and Mr. Wampler has cross-appealed.

To sustain the action of the trial court, Mrs. Wampler relies upon two propositions:—*i.e.* (1) Mr. Wampler did not have the right under the terms of the policy to change the beneficiaries, and (2) that the change of beneficiary having been made on a duplicate policy became ineffective when the original policy was found. We find both contentions to be without merit.

The record shows that in 1958, Mr. Wampler took out a policy of life insurance upon his minor son Jimmy Wayne Wampler with an agent of Mississippi Valley Life Insurance Company, a predecessor of appellant company. Mrs. Wampler testified that because of a snow storm the agent stayed at their house until 5:00 a.m. February 2, 1958. The application for the $10,000 policy with double indemnity upon the life of Jimmy Wayne Wampler and designating both Mr. and Mrs. Wampler as beneficiaries, shows Jimmy Wayne Wampler to be a minor, a student without a business address and without any other occupations. It also provided:

Notwithstanding the provisions of the application, Mrs. Wampler readily admits that Mr. Wampler took out the policy and made all of the premium payments with the first premium being paid from a joint account. Subsequent to the issuance of the policy Mr. and Mrs. Wampler had some domestic difficulties. On July 31, 1961, while Jimmy Wayne Wampler was still a minor, Mr. Wampler executed an "Affidavit of Loss of Policy", and executed an application for a change of beneficiary. In accordance with Mr. Wampler's request, the Company changed the designation of beneficiaries to remove Mrs. Wampler's name. Mr. and Mrs. Wampler were divorced on August 10, 1962, and entered into a property settlement which in so far as here pertinent provided:

"Wife does hereby release all right, title, interest, equity, dower, homestead or other interests * * * to all the property of the husband, real, personal and mixed, except that specifically given to her on pages

1 to 4, hereof (certain cash, real estate, dryer stock and personal belonging, but not including insurance.) In that connection wife agrees to execute such further documents as may be necessary for the purpose of transferring or releasing her interest in all other property, including, without limiting the generality thereof, certificates of indebetedness, certificates of equity, farming machinery * * * life insurance policies or other assets."

Jimmy Wayne Wampler after the divorce lived with and farmed with Mr. Wampler until his untimely death on November 7, 1970.[1] The Company, pursuant to Mr. Wampler's beneficiary change paid the policy proceeds to him before this action was commenced.

The policy with reference to a change of beneficiary provides:

"CONTROL. It is hereby understood and agreed that this contract is made with the premium payor, *designated in the application for this policy,* and .that .all transactions affecting this policy prior to the Insured's attaining legal age shall be between the Company and said premium payor, or in case of the prior death of said premium payor, then between the Company and a parent or a legally appointed guardian of the Insured. It is also understood and agreed that after the Insured attains legal age the Company shall deal directly with the Insured as though this contract .had been with the Insured originally, unless otherwise provided herein." [Emphasis ours]

Mrs. Wampler to sustain the action of the trial court points to the italicized portion *"designated in the application for this policy"* and to the provision of the application wherein, under the signature of Jimmy Wayne Wampler, it states: "I HEREBY DECLARE that I have paid to the agent..." the sum of $105.10. Upon these premises she argues that Jimmy Wayne Wampler was the "premium payor" under the terms of the policy.

[1]Murder charges have been filed as a result of his death. See *Kagebein* v. *State,* 254 Ark. 904, 496 S.W. 2d 435 (1973).

In making this contention she asserts that the provisions of the policy should be construed most strongly against the Company. We disagree on both contentions.

Provisions in life insurance contracts with reference to beneficiaries or changes in beneficiaries are in the nature of a last will and testament and are not matters in which the Company has a conflicting interest with the insured. Consequently courts do not, in construing such provisions, invoke the time honored doctrine applicable to coverage issues that ambiguities are to be construed most strongly against the Company and in favor of the insured. Instead such provisions are construed in accordance with the rules applicable to the construction of wills. See *Equitable Trust Co.* v. *Epling,* 168 S.C. 494, 167 S.E. 820 (1932), and *Continental Ins. Co.* v. *Madonia,* 205 La. 828, 18 So. 2d 310 (1944). Issues involving the construction of the beneficiary provisions of life insurance policies most often occur in cases where the Company is only a stakeholder and the real parties in interest are the contesting beneficiaries. Of course, here, Mr. Wampler because of the judgment over against him is a real party in interest.

When we view the beneficiary control clause, *supra,* under the rules applicable to the construction of wills it at once appears that the "premium payor" was intended to be an adult because it specifically provides that in case of the death of the premium payor during the minority of the insured transactions affecting the policy shall be "...between the Company and a parent or a legally appointed guardian of the insured." Furthermore, the clause makes it plain that the Company did not intend to deal with a person prior to the attainment of legal age. Since the application indicated that the applicant was a minor without earnings, an ambiguity exists as to whom the "premium payor" would be under those circumstances. Upon the proof in the record here, the Company properly accepted Mr. Wampler as the "premium payor" for purposes of acting on a request for a change in beneficiaries.

To support her contention that the production of the original policy eliminated the change of beneficiaries effected after the issuance of the duplicate policy, Mrs.

Wampler points to the following endorsement on the duplicate policy:

"This policy of insurance is issued as a duplicate to Original policy Number 2598-5802 issued on the 1st day of February, 1958, which is represented by the Owner to be lost or destroyed. It creates no liability upon the part of the Company other than that created by the original, and shall be null and void at any time that the original is found."

Mrs. Wampler has cited no authority to support her position on this issue and we have found none. However, we do not construe the endorsement as making beneficiary changes, made in accordance with the terms of the original policy, null and void. As was pointed out in *Tibbels* v. *Tibbels*, 232 Ark. 857, 340 S.W. 2d 590 (1960), changes in beneficiaries under some circumstances can be accomplished without production of a policy.

Reversed and dismissed.

BROWN, J., not participating.