Beatrice CALAWAY *v.* SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY et al

CA 80-371                                    619 S.W. 2d 301

Arkansas Court of Appeals
Opinion delivered June 3, 1981
[Rehearing denied August 19, 1981.]

*Rubens, Rubens & Forrest*, and *Howard & Howard*, for appellant.

*Ray & Donovan*, for appellees.

Lawson Cloninger, Judge. This is an interpleader action filed by Southern Farm Bureau Life Insurance Company, the insurer, in which the proceeds of a life insurance policy in the sum of $48,409.78 have been paid into court. The insured, Walter Calaway, Jr., was shot and killed by his wife, the appellee, Rose Marie Calaway, the

primary beneficiary under the policy, and it is the contention of the appellant, Beatrice Calaway, the mother of the insured and contingent beneficiary under the policy, that the killing was under such circumstances as would disqualify appellee as beneficiary.

This appeal is from a finding by the trial court that the killing was justified and that appellee is entitled to the proceeds due under the policy. The only issue on this appeal is whether the findings of the trial court were clearly against the preponderance of the evidence.

The trial court was correct and we affirm.

At about 12:30 a.m., September 25, 1977, decedent arrived at his home, intoxicated, and he continued to drink beer until 4:30 a.m., at which time the fatal shooting occurred. During the intervening four hours, decedent alternately talked angrily about his parents, drank beer, and threatened, slapped, choked and kicked appellee. For a period of some fifteen minutes decedent played with a loaded .44 caliber pistol, pointing it at appellee and inquiring whether she was scared of it. Shortly after 4:00 a.m. decedent staggered from the dining room to the bedroom, then returned to the dining room door and told appellee to bring the gun to him. Decedent returned to the bedroom, lay across the bed, and had propped up his head on one elbow; appellee just stood by the bed, holding the gun. Her ankle had been broken, and she was told to stop limping, that there was nothing wrong with her. Appellee testified that decedent then told her that she just didn't look bad enough; that he was going to pistol whip her and might as well kill her. Appellee stated that decedent was in the process of getting up when appellee closed her eyes, lifted the gun, and pulled the trigger. It is undisputed that appellee fired the shot, and that the shot was the cause of death. Appellee said she always did what decedent told her to do; that if she had disobeyed him or left the house he would have found her then or at a later time and would probably have killed her.

During the trouble the couple's two children, ages 2 and 1, awoke and stood at the bedroom door crying. Decedent

told the children that if they didn't shut up he would whip them. Appellee put the children back to bed, and she stated that she was afraid to leave the children in the house with decedent, and that in her injured condition she could not take them with her.

Appellee testified that decedent had beaten her severely many times upon previous occasions, and that she was afraid of him. She stated: "I would not tell him it would hurt, he would just hit harder. Walter was the type of person that when he was drinking that if you didn't do what he said when he said it then it was just too bad. He would light into me and just start hitting me with his fist and slapping me and kicking me, and this wasn't just this time, it was years — years of it I mean — the time he shot my cat and shot the hole in the kitchen — I mean that he would do things like that when he was drunk. I was always required to do exactly what he said . . ."

Following the incident, appellee was in the hospital eight days. Her injuries, medically verified, included fractures to her ankle, upper leg and jaw, swollen eyes, bruises on the face, arms, back, and throat.

In Couch on Insurance 2d, § 27:154 (1960), it is stated that a beneficiary who kills the insured under such circumstances that the act is justifiable, excusable, or lawfully committed in self defense, or under such circumstances that he has no criminal responsibility for his acts, is not barred from receiving the proceeds of the policy. Thus, the beneficiary is entitled to recover when he killed the insured while acting in self defense. Ark. Stat. Ann. § 41-507 (Repl. 1977) provides:

Justification. Use of deadly physical force in defense of a person.

(1) A person is justified in using deadly physical force upon another person if he reasonably believes that the other person is:

(a) committing or about to commit a felony

involving force or violence; or

(b) using or about to use unlawful deadly physical force.

(2) A person may not use deadly physical force in self defense if he knows that he can avoid the necessity of using that force with complete safety:

(a) by retreating, except that a person is not required to retreat if he is in his dwelling and was not the original aggressor . . .

It is settled law in Arkansas that when the beneficiary in a policy of life insurance wrongfully kills the insured, public policy prohibits a recovery by the beneficiary. *Horn v. Cole, Administrator,* 203 Ark. 361, 156 S.W. 2d 787 (1941). In the case of *Metropolitan Life Insurance Company v. Shane,* 98 Ark. 132, 135 S.W. 836 (1911), the Court said:

The willful, unlawful and felonious killing of the assured by the person named as beneficiary in a life policy forfeits all rights of such person therein. It is unnecessary that there should be an express exception in the contract of insurance forbidding a recovery in favor of such person in such event. On considerations of public policy the death of the insured, willfully and intentionally caused by the beneficiary of the policy, is an excepted risk so far as the person thus causing the death is concerned.

A case almost directly in point with the case at bar is *Pendergrass et al v. New York Life Insurance Company,* 181 Fed. 2d 136 (1950), in which the United States Court of Appeals, 8th Circuit, in applying Arkansas law, found the homicide to be justifiable, and stated:

At this time the deceased was violent and abusive to cross-defendant. When in the bedroom the deceased struggled with the cross-defendant and attempted to choke her. She extricated herself from his hold and flung her body across his in an attempt to hold him on

the bed. The deceased threw the cross-defendant to the floor. At that time she had an urge to run but the deceased, with an oath, then demanded his gun. The cross-defendant impulsively began to execute his command as she had done many times before. Just as the cross-defendant was handing the gun to deceased, the latter, with an oath, threatened to 'kill' or 'get' the cross-defendant. He made this threat as he was arising from the bed, and at that moment the cross-defendant pulled the trigger.

Appellant contends that the testimony of appellee is unworthy of belief, because of inconsistent statements between her deposition and the testimony at the trial. In his ruling, the trial judge made the following specific finding:

It is contended that she is unworthy of belief, because her statements to the Court conflict with those given in a pretrial deposition. When those statements relied upon are read in context and along with the whole deposition, the Court finds no inconsistency.

We agree with the trial court that appellee's testimony, when read in context, is not inconsistent. In *Digby* v. *Digby*, 263 Ark. 813, 567 S.W. 2d 290 (1978), the Court stated:

While this Court considers the evidence on a chancery appeal *de novo*, it will not reverse the chancellor unless it is shown that the lower court decision is clearly contrary to a preponderance of the evidence. Particularly where the credibility of witnesses appearing before the chancellor is concerned, this Court attaches substantial weight to the chancellor's findings on material issues of fact.

The trial judge believed the testimony of appellee, and we not only recognize the superior position of the trial judge to gauge the credibility of the witness, there is nothing in the record to cause this Court to doubt the truthfulness of appellee. Appellee was in her dwelling and she was not required to retreat from the home. Her testimony was that she feared for her life and the safety of the couple's small

children, and evidence given by decedent's closest friend and drinking companion indicated that appellee's fears were well founded. The companion testified that he had been present on a previous occasion when decedent had severely beaten appellee, and that he observed decedent severely punish the older child, a two-year-old girl, when the child did not perform as decedent demanded. On both occasions, the actions of the decedent were of such an extreme nature that the companion intervened and persuaded decedent to desist.

The trial court found, and we hold, that appellee had justification to reasonably believe that decedent was about to commit a felony involving force or violence or was about to use unlawful deadly physical force.

The decision of the trial judge is affirmed.

CRACRAFT, J., not participating.