Elzie Leta WARE *v.* Hilda Jean Ware GREEN, et al.

84-262                                                          691 S.W.2d 167

Supreme Court of Arkansas

Opinion delivered June 17, 1985

[Rehearing denied July 15, 1985.*]

---

\* George Rose Smith, J., not participating.

*Spencer, Spencer & Depper*, for appellant.

*Jay E. Hoggard*, for appellee.

ROBERT H. DUDLEY, Justice. The testator devised a life estate with a power to sell when the devisee no longer had enough money to maintain "the standard of living to which she is accustomed." Appellant, the devisee, filed a petition for declaratory judgment asking the court to declare whether her power to sell was exercisable only upon an order by the court or whether it was exercisable upon her judgment with the court review being limited to whether she acted in bad faith. We hold that the power devised to appellant may be exercised upon her judgment and a subsequent court review, if any, is limited to whether she used bad faith in making that judgment.

Neither party raises an issue about the interest which appellant may sell. In *Patty v. Goolsby*, 51 Ark. 61, 9 S.W. 846 (1888), we held that the widow could only convey her life estate when the will provided "I give and bequeath unto my beloved wife . . . all my . . . lands . . . to have and to hold during her natural life, or until she may think proper to marry, with full power to sell and dispose of such property as she may think proper; . . . ." However, in *Pearrow v. Vaden*, 201 Ark. 1146, 148 S.W.2d 320 (1941), we held that the widow could convey the fee when the devise provided "To my beloved wife . . . all of my . . . property . . . during her lifetime with the right to dispose of any or all of said property in the event that her financial condition or health

make it necessary to do." In *Pearrow* v. *Vaden, supra,* we pointed out a distinction between the cases—in *Patty* v. *Goolsby* the power to convey could be defeated by remarriage, while in *Pearrow* v. *Vaden* the power could not be defeated. We concluded *Pearrow* with the following:

> We think the proper construction of the will does not thus limit the interest which the widow may convey. Had she been given a life estate without any power to convey, she could have sold that estate. We think the title the widow may convey is not confined to her life estate, but covers the fee title to so much of the property as may be subject to the power. If the will conferred the right only to sell the life estate, the power is meaningless, as she had the right otherwise to sell her life estate, and the provisions of the fourth paragraph for the division of all property remaining at the death of the widow would be equally meaningless.

> Paragraphs 2 and 4 of the will must be read together, when so read effect may be given to them only by holding that it was the testator's intention that his children should divide among themselves, in the proportions indicated, any of the devised property which the widow had not conveyed in her lifetime for the permissible purposes, because that—and that only—would be the "property remaining."

The foregoing discussion is not meant to indicate, one way or the other, what interest the appellant may sell. The issue was not raised below, nor has it been briefed or argued on appeal. However, it is necessary to set out because if the appellant only attempts to sell her life estate, it is not necessary for her to exercise the power set out in the devise, and this case is moot, but, if the appellant attempts to sell the fee it is necessary for her to exercise the power and the point of this appeal becomes an issue.

The pertinent part of the devise in the case at bar provides:

> FOURTH: All my real property, including my surface ownership, my mineral interest and my royalty interest, I give, devise and bequeath unto my beloved wife, Elzie Lata Ware, to be used and enjoyed by her during the term of her natural life or so long as she shall remain my widow. During such period of time she shall have the

following powers and rights:

(a) . . .

(b) . . .

(c) . . .

(d) In addition thereto, I hereby grant unto my wife the power to sell or otherwise dispose of my realty in part or in whole subject to the following terms and conditions:

(1) When my wife does not have adequate money to provide her with the standard of living to which she is accustomed, then she shall have the right to dispose of any or all of my land by first giving written notice to my children, James Dolas Ware and Hilda Jean Ware Green, that she intends to sell such property and they shall be given the first option to purchase said property.

(2) In the event either or both of my children shall desire to purchase said property, then my wife shall sell said property to either or both of them.

(3) In the event my children do not desire to purchase the property, then my wife shall have the full power to sell the property to another person at a sum of no less than that which was offered to my children.

(4) Any proceeds from said sale shall be the sole and absolute property of my wife and she shall use said money only for her support and maintenance.

(e) Upon death of my wife or her remarriage, then my realty, or whatever shall be remaining, I give, devise and bequeath as follows:

(1) An undivided one-half of my realty, I give, devise and bequeath unto my daughter, Hilda Jean

Ware Green, and her children, Deborah Ann Green, Jackie Wilson Green, and Robby Green, all to share and share alike.

(2) An undivided one-half of my realty, I give, devise and bequeath unto my son, James Dolas Ware, and his children, Ricky Lynn Ware and Rhonda Kay Ware, all to share and share alike.

The appellant's point of appeal is that she should be able to exercise the power without prior court approval. The appellees counter that the power may be exercised only after a court finds that the restrictions or conditions have been met. The trial court ruled that the power could be exercised only after court approval. We modify that ruling and hold that the power may be exercised upon the decision by the devisee that she no longer has enough money to maintain the standard of living to which she is accustomed, and her decision will be reversed only in the event it is made in bad faith.

While the issue is one of first impression for this Court, it has been frequently litigated in other states. 51 Am. Jur.2d, *Life Tenants and Remaindermen*, § 67, in part, provides an overview of the decisions as follows:

Where a grant or devise of power to a life tenant is limited to a sale or other disposition to meet some contingency which may or may not arise, as where power is given to sell, transfer, or dispose of the property or as much thereof as may from time to time be needed for the life tenant's support and maintenance, the question of who may determine when the contingency so provided against has arisen, thus maturing the power to convey, is one which has frequently occupied the attention of the courts. In the great majority of cases, it is held that if the grant of power is otherwise full or general in its terms and the determination of the question is one which involves the exercise of judgment and discretion, the decision made in good faith by the life tenant himself is final. It is likewise held in these cases that the amount required or used by the life tenant for his support and maintenance rests entirely in his honest judgment and discretion, which cannot be controlled or limited by the courts in the absence of bad faith or fraud.

This principle has been applied, among other instances, where a testatrix gives the residue of her estate to her husband "during his life, with full power to sell, transfer and dispose of the same or as much thereof as may from time to time be needed for his support and maintenance during his said lifetime," with remainder over to her children; where a will provides that the husband of the testatrix was to have the use and income of all her property, subject to the bequests therein made, during his life, "and any part of the principal that may be needed for his support;" where a will gives all the testator's property left after the payment of debts to his sister and his niece, "to use or sell in any way they may wish for their support," what is left to go to the testator's brother and sisters;" where a testator bequeaths the residue of his property to his wife, "to her use and behoof and dispose of for her maintenance during her natural life;" and where a will gives the residue of the estate to the testator's wife, "to have and to hold and enjoy for and during her natural life, with full power to make such disposition thereof as may be necessary for her own comfort and support." (footnotes omitted)

Cases on the subject are annotated in 2 A.L.R. 1243, S. 27 A.L.R. 1381, 69 A.L.R. 825, 114 A.L.R. 946 and 31 A.L.R.3d 169.

■ Rarely are two wills found which are exactly alike, and the construction of one may not be helpful in the construction of another. The purpose of construction is to determine the intention of the testator, and that intention must be derived from the language employed in the will.

■ All of the provisions of the Fourth paragraph of the will before us must be construed together. The testator first devised a life estate with a power to sell. Then, in section (d), he provided "I hereby *grant unto my wife the power to sell the property* . . . subject to the following terms and conditions." In (d)(3) he then provided "In the event my children do not desire to purchase the property, *then my wife shall have the full power to sell the property*. . . ." The foregoing language indicates that the testator intended for the devisee to be able to exercise the power. Language which was not used by the testator is also significant. If he had intended that the power should be exercised only after a

judicial determination, with its delays and expenses, he would have said so. It appears that the intent of the testator was to clothe his widow, and not the court, with the power to sell.

Paragraph Four (d)(4) is consistent with the notion of a testator who trusted his widow to act as he directed: "Any proceeds from said sale shall be the sole and absolute property of my wife and she shall use said money only for her support and maintenance." It is meaningful that the testator required neither an accounting nor a bond of her.

Finally, we look at the four corners of the whole instrument to determine the testator's intent. *Martin* v. *Simmons 1st Nat'l. Bank*, 250 Ark. 774, 467 S.W.2d 165 (1971). If his primary purpose was to benefit the remaindermen, with only a secondary concern to the life tenant, then the life tenant's power to sell must be strictly construed so as not to compromise unjustly the rights of the remaindermen. However, if the primary purpose was to benefit the life tenant, with merely a provision for the orderly disposition of any property that might remain so that it will not pass intestate, then the life tenant's power to sell must be liberally construed. The expressed intent of this will was primarily to provide for the life tenant and then to provide for the orderly disposition of anything remaining. Paragraph Four (c) provides: "Upon the death of my wife or her remarriage, then my realty, *or whatever shall be remaining*, I give, bequeath and devise as follows: . . . ."

The language of this will is inconsistent with the idea that a court, instead of the life tenant, would determine when the power to sell might be exercised. We hold that the life tenant, rather than the court, may determine when the power is to be exercised, and that decision may be set aside only if exercised in bad faith. However, the devisee's power of sale is subject to the requirement that she first notify the testator's children of the intent to sell and that she give the children the first option to purchase the land, as set out in the will.

Affirmed as modified.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I have no problem with the general rule expressed by the majority, which permits a sale by a life tenant without prior approval by a court, where the

language of the will makes it clear the testator intended that result. I submit, however, the rule is misapplied here, as both the four corners of the will and the circumstances of the case suggest the testator did not intend an unlimited power to be exercised at the discretion of the appellant. The Chancellor was entirely correct and I would affirm the decree.

Rules of construction of wills are used to determine the intent of the testator in the absence of a clear expression of intent. They are never to be used to circumvent such intent, even where the intent is only implied from the four corners of the will. See *Armstrong* v. *Butler*, 262 Ark. 31, 553 S.W.2d 453 (1977).

> It is but the statement of a commonplace rule of law to observe, in the interpretation of the provisions of a will, that the intention of the testator as therein expressed must prevail. The statute of this state commands that all courts and others concerned in the execution of last wills shall have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them. *Bussoner* v. *Marsh*, 140 Or. 331, 12 P.2d 329 (1936).

The general rule, stated in 51 Am.Jur.2d 293, is if the grant of power to sell or convey is otherwise full or general in its terms and the determination of whether the condition for the exercise of the power involves the exercise of judgment and discretion, the life tenant has the exclusive right to make that determination, if done in good faith.

The rule has two constituents: the power to dispose of the property must be full or general in its terms, and the fulfillment of the condition must not be objectively defined by the instrument and, therefore, judgment or discretion must be exercised in the decision process.

The second aspect of the rule is applicable here: this will provides no standard for determining when the wife (Appellant) does not have enough to maintain herself according to her accustomed standard. In concluding that the wife has the power to make the determination in light of the general rule, the majority is overlooking an aspect of the rule which is absent here—the power to sell, rather than being full and general, is impliedly if not specifically limited under the wording of the will.

Admittedly, a restriction that the proceeds from a sale be used for the support and maintenance of a life tenant, taken alone, has not been considered a significant limitation so as to avoid the general rule. However, in this case the wife's right to sell was subject to a requirement that she first notify the testator's children of an intent to sell and that she give the children the first option to purchase the property. And if the land was sold, it was not to be sold for a price less than was offered by the children. Additionally, the proceeds of any sale were to be used "*only*" for the support and maintenance of the wife. In sum, the appellant's power of sale from the four corners of this will falls short of being full and general.

In the cases relied on by the majority opinion from Am.Jur.2d and A.L.R., there is no indication of any restriction on the power to sell. The language typically found in those cases is notably lacking here ("as she may see fit," "if in her opinion"), language evidencing an intent by the testator that the life tenant have unbridled discretion in determining when her station in life is reduced. No such wording appears in this will.

An early case from Massachusetts is in point, notwithstanding the distance in time, *Minot and Others* v. *Prescott*, 14 Mass. 496 (1817). The last will of J. Betton on July 17, 1776 devised to his wife, Mary, the income from his real and personal estate during her life and "if not sufficient to support her comfortably," then the power to sell any of his estate for that purpose. In December, 1776, Mary granted the premises, and contended in the ensuing litigation that she was the sole judge of the insufficiency of the income to support her comfortably, citing 2 Wilson 6. Chief Justice Cushing wrote for a unanimous court:

> This is not a fee simple. The power is not to dispose of at will and pleasure, as in the case cited from *Wilson*, but on the happening of a particular event, *viz.*, the income proving insufficient to support the wife comfortably. This is a precedent condition; and was so adjudged in the case of *Dike* v. *Ricks*, where the clause in the will was substantially the same with that in the present case. The happening of this condition ought to have been stated in the deed to *Prescott*, as well as shown in the verdict, in order to entitle the defendant to judgment. It is a matter which can be traversed; and as the jury have found that there was a

sufficiency of personal estate for the comfortable support of the widow, this conveyance cannot be supported. I am therefore clearly of opinion that the demandants ought to have judgment on this special verdict.

Finally, the circumstances of each case are subject to scrutiny in resolving these disputes (51 Am.Jur.2d, Life Tenants and Remaindermen, § 66, p. 294). Here the testator had been married for many years to a first wife, who died in 1973 after their children were grown to middle age. He and the appellant were married only five years and while the marriage was doubtless a happy one, it is clear the decedent wanted his children provided for. The land in question, a farm of some 125 acres, had been bought when the children were small and had been their home from infancy. The Chancellor heard a wealth of testimony that all the family had worked hard to improve the place and the testator wanted the children to have the land. His findings were not clearly erroneous and should be affirmed.