Amy SPENCER *v.* Randall FLOYD, Sr.

CA 89-299                                        785 S.W.2d 60

Court of Appeals of Arkansas
Division II
Opinion delivered March 7, 1990

*Sexton Law Firm, P.A.,* by: *Joseph C. Self,* for appellant.

*Walters Law Firm, P.A.,* by: *Bill Walters,* for appellee.

JUDITH ROGERS, Judge. This interpleader action involves a

dispute over the proceeds of a life insurance policy. Upon finding that the primary beneficiary was disqualified for having wrongfully caused the death of the insured, the chancery court held that the proceeds were distributable to the contingent beneficiary named in the policy, as opposed to the insured's estate. On appeal, the appellant contends that this decision is contrary to Arkansas law and the terms of the policy. We uphold the decision of the chancellor, and affirm.

The record reveals that on March 2, 1983, the insured, Randall Floyd, Jr., entered into a contract of life insurance with Federal Kemper Life Assurance Company. The policy was issued in the face amount of $100,000, and designated the insured's wife, Jackie Lee Floyd, as primary beneficiary, and his father, Randall Floyd, Sr., appellee herein, as the contingent beneficiary. The insured died intestate on March 15, 1988, and was survived by appellee, his wife, a son, and a daughter, Amy Spencer, the appellant. Upon entering a plea of guilty, the insured's wife, the primary beneficiary, was convicted of first degree murder in connection with the death of the insured, and she is presently serving a term of life imprisonment in the Arkansas Department of Correction.

After receiving a claim by appellee for the proceeds of the policy, Federal Kemper instituted this litigation as an interpleader action, joining as defendants both appellee and the insured's estate.[1] Appellant, claiming a beneficial interest through the estate, was allowed to intervene, and thereafter she filed a motion for judgment on the pleadings. By order of April 27, 1989, the chancellor determined that the proceeds were payable to appellee, as the contingent beneficiary named in the policy. It is from this order that this appeal arises.

As below, the sole question on appeal is who, as between the insured's estate and the named contingent beneficiary, is entitled to the proceeds of a life insurance policy when the primary beneficiary intentionally murders the insured? By stating the

---

[1] Originally, the complaint named appellee as defendant both individually and as the personal representative of the insured's estate. Appellee was duly replaced by order of the probate court by a special administrator, Dale Arnold, who was substituted in this action to represent the claim of the estate.

issue in this manner we are recognizing that it is settled law in Arkansas that when the beneficiary in a policy of life insurance wrongfully kills the insured, public policy prohibits a recovery by the beneficiary. *Calaway v. Southern Farm Bureau Life Ins. Co*, 2 Ark. App. 69, 619 S.W.2d 301 (1981). *See also York, Administratrix v. Hampton*, 229 Ark. 301, 314 S.W.2d 480 (1958); *Horn v. Cole, Administrator*, 203 Ark. 361, 156 S.W.2d 787 (1941); *Inter-Southern Life Ins. Co. v. Butts*, 179 Ark. 349, 16 S.W.2d 184 (1929); *Cooper v. Krisch*, 179 Ark. 952, 18 S.W.2d 909 (1929); *Metropolitan Life Ins. Co. v. Shane*, 98 Ark. 132, 135 S.W. 836 (1911). In *Shane*, our supreme court stated:

> The willful, unlawful and felonious killing of the assured by the person named as beneficiary in a life policy forfeits all rights of such person therein. It is unnecessary that there should be an express exception in the contract of insurance forbidding a recovery in favor of such person in such event. On considerations of public policy the death of the insured, willfully and intentionally caused by the beneficiary of the policy, is an excepted risk as far as the person thus causing the death is concerned.

98 Ark. at 138, 135 S.W. at 839. The finding of the chancellor that the primary beneficiary is disqualified for having wrongfully murdered the insured is not contested on appeal.

The appellant's argument that the proceeds should become an asset of the estate is two-fold. She first argues that this result is supported by Arkansas law, and she refers us to the decisions in *Horn v. Cole, Administrator, supra*, and *Cooper v. Krisch, supra*. Secondly, appellant contends that this result is consistent with the terms of the subject policy. The policy provides:

> Death—Unless otherwise provided:

> 1. If no beneficiary survives the insured, the proceeds of the policy will be paid to the insured's estate or assigns.

> 2. The interest of any beneficiary who dies before the insured will pass to any beneficiary who survives, share and share alike.

In this regard, appellant argues that the policy specifies that the contingent beneficiary takes only when the primary beneficiary

dies before the insured, and since the primary beneficiary is still living, the contingency upon which the alternative beneficiary would prevail has not arisen, and thus the proceeds are then distributable to the insured's estate. Conversely, the appellee argues that the intent of the insured is controlling, which is indicated by his naming a contingent beneficiary. The chancellor here found that this expression of the insured's intent was determinative, as he found "that it was the insured's intent as clearly expressed in the policy that in the event his wife, Jackie Lee Floyd, was unable to take the proceeds of the insurance policy, the proceeds would be paid to the named contingent beneficiary, Randall Floyd, Sr."

We have reviewed the Arkansas decisions in this area of law, but do not find them to be controlling on the issue now before us. In *Cooper* v. *Kirsch, supra*, the insured's estate was preferred over an heir when the *sole beneficiary* to the life insurance policy murdered the insured. There, citing *Inter-Southern Life Ins. Co.* v. *Butts, supra*, and *Metropolitan Life Ins. Co.* v. *Shane, supra*, the supreme court stated that "when the beneficiary in a policy of insurance unlawfully kills the insured, public policy prohibits recovery by him, and that the amount of the insurance automatically becomes an asset of the deceased's estate, to be recovered by the administrator for the payment of debts and distribution to heirs." Likewise, in the case of *Horn* v. *Cole, Administrator, supra*, it was held that the estate was entitled to the proceeds as it was found that the *sole beneficiary* unlawfully killed the insured. In these decisions, however, our appellate courts have not addressed this question in the context of a dispute between the estate and a contingent beneficiary. Only in *Calaway* v. *Southern Farm Bureau Life Ins. Co., supra*, was there involved a contingent beneficiary, who unsuccessfully appealed the lower court's decision that the killing of the insured by the primary beneficiary was justified, which thereby permitted the primary beneficiary to receive the proceeds. The precise issue in the instant case has not been addressed by our appellate courts; therefore, it is one of first impression in this state.

Since this is a novel question, we have looked to other jurisdictions for guidance. However, we note that of those jurisdictions which have squarely addressed this question, the courts have reached divergent conclusions. In favoring the estate

over the contingent beneficiary, some courts strictly construe the terms of the policy in question,[2] as advanced by appellant, while others have denied recovery by the contingent beneficiary based upon statutory authority.[3] Courts which have held for the contingent beneficiary primarily do so based on the intent of the insured,[4] as argued by appellee. Some jurisdictions have preferred the contingent beneficiary despite statutory language seemingly to the contrary,[5] while yet another considers the primary beneficiary to have predeceased the insured for the purpose of interpreting the policy.[6] While this survey is by no means exhaustive, it is indicative of the range of the opinions on this issue.

The leading decisions, however, supporting the parties' respective positions, appear to be *Beck* v. *West Coast Life Ins. Co.*, 38 Cal. 2d 643, 241 P.2d 544 (1952), and *Bullock* v. *Expressmen's Mutual Life Ins. Co.*, 234 N.C. 254, 67 N.E.2d 71 (1951). In *Bullock*, the North Carolina Court strictly construed the terms of the policy which provided that upon the death of the insured, the insurance money should be paid to the primary beneficiary, if living, or if not living to the contingent beneficiary. The court determined that the alternative beneficiary's interest was contingent upon not only the death of the insured, but also the death of the primary beneficiary. Since the primary beneficiary

---

[2] *Webb* v. *Voirol*, 773 F.2d 208 (8th Cir. 1985); *Life & Casualty Ins. Co.* v. *Martin*, 603 F. Supp. 281 (E.D. Mo. 1985); *Reliable Life Ins. Co.* v. *Spurgeon*, 763 S.W.2d 674 (Mo. App. 1988); *Bullock* v. *Expressmen's Mutual Life Ins. Co.*, 234 N.C. 254, 67 S.E.2d 71 (1951).

[3] *Crawford* v. *Coleman*, 726 S.W.2d 9 (Tex. 1987) (overruling *Deverox* v. *Nelson*, 529 S.W.2d 510 (Tex. 1975); *Dowdell* v. *Bell*, 477 P.2d 170 (Wyo. 1970). *Cf., Seidlitz* v. *Eames*, 753 P.2d 775 (Colo. App. 1987); *Wilkins* v. *Fireman's Fund American Life Ins. Co.*, 107 Idaho 1006, 695 P.2d 391 (1985).

[4] *Life Ins. Co. of Virginia* v. *Cashatt*, 206 F. Supp. 410 (E.D. Va. 1962); *Maneval* v. *Lutheran Brotherhood Corp.*, 281 A.2d 502 (Del. Super. Ct. 1971); *Metropolitan Life Ins. Co.* v. *Wenckus*, 244 A.2d 424 (Me. 1968); *Turner* v. *Prudential Ins. Co. of America*, 60 N.J. Super. 175, 158 A.2d 441 (1960); *Carter* v. *Carter*, 88 So.2d 153 (Fla. 1956); *Beck* v. *West Coast Life Ins. Co.*, 38 Cal.2d 643, 241 P.2d 544 (1952); *Neff* v. *Massachusetts Mutual Life Ins. Co.*, 158 Ohio St. 45, 107 N.E.2d 100 (1952); *Prudential Ins. Co. of America* v. *Baitinger*, 452 So.2d 140 (Fla. Dist. Ct. App. 1984).

[5] *Lewis* v. *Lewis*, 315 N.E.2d 816 (S.C. App. 1984); *Brooks* v. *Thompson*, 521 S.W.2d 563 (Tenn. 1975).

[6] *In re Kaplan's Estate*, 49 Misc.2d 335, 267 N.Y.S.2d 345 (1966).

was still living, although prohibited from taking, the court concluded that the contingency had failed upon which the alternative beneficiary's interest devolved, and thus the estate was held to be entitled to the proceeds of the policy.

On the other hand, in *Beck, supra*, although there was analogous language in the policy under consideration, Judge Traynor, speaking for the California court, concluded that the contingent beneficiary should prevail against the estate based on the intent of the insured as determined by the naming of an alternative beneficiary. The court said:

> Because the beneficiary clause of a life insurance policy in which the insured has reserved the right to change beneficiaries is donative and testamentary in character, the intent of the insured as expressed by the language that she used should be given effect so far as possible. Although her expressed intent that her husband receive the proceeds cannot be given effect, the policy names the one she wished to take if her husband could not. It stated that the proceeds should be paid to the alternative beneficiary, if the primary beneficiary predeceased the insured. Thus, in the type of disability that would naturally be anticipated by the insured, the alternative beneficiary was preferred over the estate of the insured. In this case there occurred the only other possible contingency in which the primary beneficiary would be under a disability equivalent to actual death. The insured has clearly indicated her intent that any interest her estate might have in the proceeds of the policy should be subordinate to the interest of the alternative beneficiary. This intent is recognized by a holding that the alternative beneficiary may recover the proceeds. A holding that the estate of the insured is entitled to the proceeds would not only defeat this intent, but would also enable the murderer to deprive the alternative beneficiary of her opportunity to take in preference to the estate by foreclosing the possibility that the murderer might predecease the insured. The rule that prevents his profiting by his own wrong should not be invoked in such a way as to prejudice the rights of the alternative beneficiary. 'In a word, it appears to me that the crime of one person may prevent that person from the assertion of what would otherwise be a

right, and may accelerate or beneficially affect the rights of third persons, but can never prejudice or injuriously affect those rights.'

*Beck*, 241 P.2d at 546-47 (citations omitted). Similarly, in *Carter v. Carter*, 88 So. 2d 153 (Fla. 1956), it was stated:

Although obviously not a will, the beneficiary clause of a life insurance policy is in some measure analogous in principle to the disposition of one's estate by will. It is usually ambulatory. It is almost always donative, and in a sense it is testamentary in character in that payment is customarily contingent upon the death of the insured. In view of the nature of the beneficiary clause, it would appear to be appropriate in construing it to endeavor to give effect to the intent of the insured if it is possible to do so without doing violence to the expressed language of the policy.

*Carter*, 88 So. 2d at 159-60. The court further found that the word "beneficiary" comprehends the term in its broadest legal sense and must be considered as having reference to the survival of a beneficiary eligible to take. The court declined to follow the decision in *Bullock*, and in agreement with *Beck*, it held that "[w]e prefer to adhere to what we consider the better rule which is one that appears to give effect to the intent of the insured by paying the proceeds to the beneficiary first in priority who is eligible under the law to receive the money."

Other courts have determined that the proceeds in this situation should be distributed to the contingent beneficiary based upon similar reasoning. In *Brooks v. Thompson*, 521 S.W.2d 563 (Tenn. 1975), the Tennessee court surmised:

Admittedly the insured in cases such as this never anticipates being feloniously killed by the primary beneficiary. It is difficult to know what the actual intention of the insured would have been had the problem in question been brought to his attention. It is clear, however, that he did name an alternate beneficiary in the insurance policy, and in our opinion the *better view* is to allow the proceeds to pass according to the alternative provisions of the policy rather than go as intestate personal property.

*Brooks*, 521 S.W.2d at 567 (emphasis ours). Moreover, in

*Maneval* v. *Lutheran Brotherhood Corp.*, 281 A.2d 502 (Del. Super. Ct. 1971), it was said:

> Although there are cases to the contrary, the *better rule* in similar cases in other courts gives effect to the *underlying intent* of the insured and permits the contingent beneficiaries to recover despite the fact that the primary beneficiary, barred from recovery by operation of law, has in fact survived the insured.

*Maneval*, 281 A.2d at 504 (emphasis ours).

We agree that the "better view" is to permit recovery by the contingent beneficiary as opposed to the insured's estate, when the primary beneficiary wrongfully causes the death of the insured. Under Arkansas law, provisions in insurance policies as to beneficiaries are in the nature of a last will and testament, and as such, these provisions are to be construed in accordance with the rules applicable to the construction of wills. *American Foundation Life Ins. Co.* v. *Wampler*, 254 Ark. 983, 497 S.W.2d 656 (1973). The cardinal rule for the interpretation of wills or other testamentary documents is that the intent of the testator should be ascertained from the instrument itself and effect given to that intent. *Ware* v. *Green*, 286 Ark. 268, 691 S.W.2d 167 (1985). The purpose of construing a will or testamentary document is to arrive at the testator's intention, but that intention is not that which existed in his mind, but that which is expressed by the language of the instrument. *Mills Heirs* v. *Wylie*, 250 Ark. 703, 466 S.W.2d 937 (1971).

We believe that the intent for the contingent beneficiary to recover the proceeds in the instant case can be gleaned from the terms of the policy itself in that the insured designated an alternative beneficiary, and the policy provided that the insured's estate should take only if *no* beneficiary survived the insured. We also note that one reason why many people take out life insurance policies payable to named beneficiaries is to provide those beneficiaries with funds which are not subject to probate and thus claims against the estate. *See Life Ins. Co. of Virginia* v. *Cashatt*, 206 F. Supp. 410 (E.D. Va. 1962). We find unpersuasive the narrower construction advanced by the appellant that the contingent beneficiary should not recover because the primary beneficiary is actually living. Just as the primary beneficiary cannot

profit from his own wrong, his actions should not be allowed to frustrate the expressed intent of the insured, and deprive the contingent beneficiary of his interest in the proceeds of the insurance policy.

Therefore, we affirm the decision of the chancellor.

AFFIRMED.

JENNINGS and MAYFIELD, JJ., agree.